Frank H. GILBERT and Hazel P. Peterson, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15163.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1957.

Louis McClennen, Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., for appellants.

Charles K. Rice, Asst. Atty. Gen., Sheldon I. Fink, Lee A. Jackson, and Hilbert P. Zarky, Washington, D. C., for appellee.

Before HEALY, LEMMON, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Frank H. Gilbert and his wife, now Hazel P. Peterson, filed a joint income tax return for the calendar year 1949, in which the profit on a sale of certain stock was reported on the installment basis. The Commissioner of Internal Revenue thereafter determined that the profit could not be so reported, and notified the taxpayers of a tax deficiency in the amount of $47,603.77. In a deficien- cy redetermination proceeding initiated by the taxpayers, the Tax Court of the United States upheld the ruling of the commissioner. On this review of the tax court's decision, the only question presented is whether petitioners were entitled to report the profit on the 1949 stock sale on the installment basis.

For our purposes, it is necessary to consider only one feature of the rather involved 1949 transaction. The contract of sale whereby the stock was sold provided for no payments in 1949. The purchase price was to be paid in eight equal semi-annual installments, the first of which was payable on March 1, 1950. It was the view of the commissioner and the tax court that the failure to provide for any payment in the taxable year in which the transaction occurred precluded petitioners from reporting the profit on the installment basis.

The applicable statute is 26 U.S.C.A. (I.R.C.1939) § 44(a) and (b), relating to sales made on an installment basis.[1] With respect to the casual sale of personal property, it is there provided that the income may be reported on an installment basis "if * * * the initial payments do not exceed 30 per centum of the selling price * * *." The term "initial payments" is defined as "payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

---

[1.] Section 44(a) and (b) reads:

"(a) Dealers in personal property. Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

"(b) Sales of Realty and casual sales of personality [sic]. In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the tax- payer if on hand at the close of the taxable year), for a price exceeding $1,- 000, or (2) of a sale or other disposition of real property, if in either case the in- itial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under reg- ulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term 'initial pay- ments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

It will be observed that this statute does not expressly require that there be "initial payments" in order to qualify the transaction for an installment basis tax report. The words used are "if * * * the initial payments do not exceed 30 per centum," *not* "if there are initial payments and they do not exceed 30 per centum." [2]

Respondent argues, however, that such a requirement is to be inferred from the language used. He apparently concedes that, if such a requirement is to be inferred, it is one which can be satisfied by the payment of a nominal sum, such as one dollar. Thus petitioners would not have received notice of a forty-seven-thousand-dollar tax deficiency if the contract had called for the payment of one dollar on the purchase price in 1949.

The intrinsic unreasonableness of a provision which would visit such harsh results upon one who has not received a nominal initial payment is enough to render suspect the reasoning which finds such an implied requirement.

This reasoning is that the words, "if the initial payments," imply that there must be an initial payment. That this is a non sequitur can be demonstrated by applying similar language to a nontax situation. Let us suppose that a college catalogue contained this statement: "If the earnings of an otherwise qualified applicant did not exceed $1,000 in the previous year, he is eligible to obtain a scholarship." No one would infer from this that an applicant must have had some earnings in the previous year in order to be eligible for a scholarship. The words "the earnings," used in this context, serve only to introduce a provision relating to the maximum amount which is permissible.

So it is with the words "the initial payments," used in the context of § 44 (b). The function of this section is to relieve taxpayers from having to pay an income tax in the year of sale based on the full amount of anticipated profits, when in fact those profits are to be received over a period of years. The thrust of the section is to relieve the taxpayer who receives little profit in the initial year. The 30 per centum provision, read only as a means of denying such relief to those who have received a substantial profit in the year of sale, is consistent with that purpose. Read as also requiring that some profit be received in the initial year, the provision would be foreign to and, in fact, inconsistent with the general purpose of the statute.[3]

Referring to the regulation cited in the margin, respondent invokes the rule that treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes. See Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.

This rule has no application here, however, since the regulation in question relates not to personal property, but to real property. U. S. Treasury Regulation 111, § 29.44–2, is entitled: "Sale of real property involving deferred payments." The treasury regulations concerning the sale of personal property on an installment basis contain no such provision.

Counsel for respondent told us at the oral argument that the failure to include such a provision in the regulations governing personal property sales was due only to "poor draftsmanship." He pointed out that the reasoning upon which

2. Congress has now made it clear that, in so far as sales made after December 31, 1953, are concerned, no initial payment in the year of sale is required. 26 U.S. C.A. § 453(b).

3. Moreover, the statutory words are "initial payments." If a requirement is to be implied from these words, it must be a requirement that the seller receive not one, but more than one, payment dur-

ing the taxable year in which the transaction occurred. But respondent has not contended for this, and the treasury regulation on which he relies is satisfied if there has been one payment during such year. U. S. Treasury Regulation 111, § 29.44–2 (1943). This regulation provides that income may not be returned on the installment basis where no *payment* in cash or property is received during the first year.

§ 29.44–2 of Treasury Regulation 111 is based is equally applicable in the case of sales of personal property.

Our disapproval of that reasoning has already been indicated. We are not persuaded that a regulation which is the product of such reasoning should be extended to cover a subject matter not expressly included in the regulation. Our disposition in this respect is influenced by the fact that extension of the regulation to cover installment sales of personal property will exact an exceedingly harsh penalty for failure to comply with an implied requirement which can be discovered only by the most devious reasoning.

██ The legislative history of the statute has been extensively argued in the briefs. Recourse may be had to the legislative history of an act of Congress only where the words are ambiguous or would bring about an end completely at variance with the purpose of the statute if literally construed. United States v. Public Utilities Commission of California, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020. The words of this statute do not appear to us to be ambiguous. If those words are literally construed to provide a permissible maximum for initial payments, and nothing more, they fulfill the purpose of the statute. Accordingly, examination of the legislative history is not here appropriate.

Reversed.