**BALTIMORE BASEBALL CLUB, INC.**
v.
**The UNITED STATES.**
No. 92–72.

United States Court of Claims.
July 13, 1973.

John B. Jones, Jr., Washington, D. C., attorney of record, for plaintiff. Andrew W. Singer and Covington & Burling, Washington, D. C., of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen., Scott P. Crampton, for defendant. Gilbert E. Andrews, Jr., Alexandria, Va., Theodore D. Peyser, Bethesda, Md., and Charles E. Auslander, Jr., Alexandria, Va., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge:

Plaintiff brought this suit to recover income taxes and assessed interest, plus interest as provided by law. We presently are called upon, by way of cross-motions for partial summary judgment, to rule on Count II of plaintiff's petition. There is no genuine issue as to any material fact, which would prevent our granting partial summary judgment in this case. We hold for the defendant for reasons hereinafter stated, and therefore allow its cross-motion for partial summary judgment on Count II of the petition.

Plaintiff is a corporation which owns and operates a professional "major league" baseball team in Baltimore, Maryland, known as the "Baltimore Orioles," a team which is a member of the American League of Baseball Clubs. It keeps its books and files its federal income tax returns on a fiscal year ending October 31 and uses the accrual method of accounting for ordinary items of income and expense.

At meetings held on November 29–30, 1967, the member clubs of the American League adopted an expansion program contemplating the addition of two new clubs, the Royals and the Pilots, to the League. On October 15, 1968, plaintiff sold six of its players under agreements of sale with the two expansion clubs.

The terms of the six agreements of sale were identical. Each provided for payment of the $175,000 purchase price "in full on November 15, 1968, but in no event shall any payment be made before November 1, 1968." Plaintiff's fiscal year ended for book and tax purposes on October 31, 1968.

Plaintiff did not report gain on the October 15, 1968, sales of player contracts in its income tax return for its fiscal year ended October 31, 1968, but elected to report such gain on the installment method of accounting and submitted the information required by Treas.Reg. § 1.453–8(b) with its return for that year. Gain on the sale of each contract was reported in plaintiff's income tax return for its fiscal year ended October 31, 1969, the year in which the full purchase price for each contract was received by plaintiff.

Plaintiff reported a net operating loss on its income tax return for the fiscal year ended October 31, 1968, which loss was carried back to plaintiff's fiscal years ended October 31, 1965, and 1966. The loss carryback to fiscal 1965 also resulted in the carryback of an unused investment credit from that year to plaintiff's fiscal year ended October 31, 1962.

On November 19, 1971, the Internal Revenue Service assessed deficiencies in plaintiff's income taxes for the fiscal years ended October 31, 1968, 1966, 1965, and 1962, in the following amounts:

| Fiscal Year Ended | Deficiency in Income Tax |
|---|---|
| October 31, 1968 | $278,530.42 |
| October 31, 1966 | 97,520.19 |
| October 31, 1965 | 59,893.06 |
| October 31, 1962 | 1,185.92 |

The deficiencies were based upon a determination by the Internal Revenue Service that plaintiff was not entitled to report gain on its October 15, 1968, sales of player contracts on the installment method, and that, as an accrual basis taxpayer, plaintiff was required to report the total gain ($1,028,556.70)[1] in its fiscal year ended October 31, 1968. This determination eliminated the net operating loss in plaintiff's fiscal year ended October 31, 1968, and carrybacks to plaintiff's fiscal years ended October 31, 1966, 1965, and 1962, accounting for the deficiencies assessed for those years.

Plaintiff paid the aforementioned assessment of income taxes, plus the interest assessed thereon, and filed timely claims for refund of such payments with

---

1. The Service determined that $1,003,608.33 of this amount was taxable as capital gain and $24,948.37 taxable as ordinary income ("depreciation recapture" under section 1245 of the Internal Revenue Code of 1954). Neither the amount nor the character of the gain are in dispute in these proceedings.

the Internal Revenue Service, which claims were denied. The assessed income taxes and interest described above were claimed by plaintiff under Count II of its petition to this court.

Two issues are raised for our resolution:

(1) Whether this plaintiff may take advantage of the installment method of accounting of section 453, Internal Revenue Code of 1954,[2] on a casual sale of personalty when no payments were received during the year of sale and the entire purchase price was paid in a lump sum in the following fiscal year.

(2) Whether Treas.Reg. § 1.453–6, which, by its terms, applies only to deferred payments sales of real property not on the installment method, is applicable to plaintiff's sales of personal property at issue in this case.

■ We shall first consider the issue of the applicability of the installment method. Absent the installment method provisions, it is clear that the plaintiff, an accrual basis taxpayer, would be required to recognize its gain on the sales in the year of sale; that is, in fiscal year ending October 31, 1968. See, generally, Treas.Reg. § 1.446–1(c)(1)(ii); Treas.Reg. § 1.451–1(a). The installment method provisions are relief provisions, the basic purposes of which are to defer payment of tax on gains until the proceeds of sale with which to pay the tax have been received and also to avoid what may be the difficult requirements of valuing the obligations of the purchaser in a closed transaction. However, since these relief provisions are exceptions to the general "timing" rules, they must be strictly construed. Cappel Home Furnishing Co. v. United States, 244 F.2d 525 (6th Cir. 1957). This is especially true when the consequence of the exceptional treatment is decidedly advantageous to the taxpayer.

The installment rules of section 453 provide a new method of reporting income for qualifying transactions. Section 453, for the taxable year involved, provided in pertinent part:

§ 453. *Installment method.*

(a) *Dealers in Personal Property.—*

(1) In general.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(2) Total contract price.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).

(b) *Sales of realty and casual sales of personalty.—*

(1) General rule.—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000, may (under regulations prescribed by the Secretary or his delegate) be re-

---

**2.** All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

turned on the basis and in the manner prescribed in subsection (a).

  (2) Limitation.—Paragraph (1) shall apply—

    (A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition —

    (i) there are no payments, or
    (ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

\* \* \* \* \* \*

There is no problem with respect to the sales price; it clearly exceeds $1,000. Further, the payments in the year of sale do not exceed 30 percent of the selling price; in fact, plaintiff clearly comes within the terms of section 453(b)(2)(A)(i) as no payments were received in the taxable year of sale. Finally, the Government now concedes that what is involved is a casual sale of personal property which is not inventory.

■ It is clear that the mere fact that a non-qualifying plaintiff may have a need for installment reporting similar to the need of a plaintiff safely within the four corners of the statute is not a sufficient reason to hold that the former plaintiff can take advantage of the installment method. The statute provides relief, i. e., installment treatment, for only a certain limited class of cases. The Senate Report to the original bill makes this clear:

  *Deferred-payment contracts other than installment contracts are not affected by the committee amendment.* When the initial payment exceeds 25 percent of the price in the case of an isolated sale of personal property, or in the case of sales of real property, the obligations that are received in addition to the initial payment are to be regarded as the equivalent of cash if such obligations have a fair market value. In consequence that portion of the initial payment and of the fair market value of such obligations which represents profit is to be returned as income as of the taxable year of the sale. [S.Rep.No.52, 69th Cong., 1st Sess., p. 19 (1939–1 Cum.Bull. (part 2) 332, 347 (1926)).] [Emphasis supplied.]

The basic failure of plaintiff's argument is definitional. It is evident that "lump-sum" and "installment" are contradictory terms. We are asked, in effect, to approve the concept of a deferred "lump-sum installment." We find that this oxymoron simply does not exist for purposes of the tax law. Webster's Dictionary defines "installment" as an

  \* \* \* arrangement for payment by installments, \* \* \* one of the portions into which a sum of money or a debt is divided for payment at set and usually regular intervals \* \* \*.

  \* \* \* \* \* \*

  \* \* \* relating to, based, on, or involving periodic payments of a fixed sum or of a pre-determined percentage of a total \* \* \*.

  *installment plan.* n: a plan that involves payment by installments.

[Webster's Third New International Dictionary, 1971.]

It is true in the tax law the word "installment" has become, to some extent, a term of art. The Government does not contend that the contracts must satisfy sophisticated formulae for periodic payment on the total. Rather, the Government urges that multiplicity is at the very heart of the definition of "installment." For casual sales of personalty for a price exceeding $1,000 and for sales of realty, a minimum of two payments is the *sine qua non* for qualification as an installment. Any lessening of this very minimum requirement would amount to a holding that deferred lump-sum payment sales qualify as installments.

■ This very same issue has been recently decided by the United States

Tax Court. In 10–42 Corp., 55 T.C. 593 (1971), the taxpayer sold to a corporation property consisting of land and a building for $500,000. Under the terms of the sale, the corporation would assume a $400,000 mortgage and execute a $100,000 purchase money mortgage due 11 years hence. Thus, no payment was made in the year of sale and the only payment called for was one some 11 years in the future for $100,000. On these facts, the Tax Court, in an opinion reviewed by the full court, held the petitioner therein could not take advantage of the installment method of section 453, which requires the receipt of at least two payments or installments. The Tax Court relied on its opinion in Thomas F. Prendergast, Executor, 22 B.T.A. 1259 (1931), which drew support from dictionary definitions for its concept of an installment sale. As we have noted, *supra*, these dictionary definitions, especially in the context of casual sales of personalty and sales of realty, are overly refined for application to a term of art in the tax context. Our holding is limited to the finding, which is all that is being urged by the Government, that the very nature of the term "installment" fairly implies that at least two payments be made.

The plaintiff misconstrues the Congressional purpose, in enacting the 1954 Code, of eliminating the so-called "initial payment" requirement of the 1939 Code. Prior to the 1954 Code revision, the Treasury [3] had interpreted the applicable statutory provisions as required that at least one payment be made in the year of sale. This interpretation was sustained by the Tax Court in Frank H. Gilbert, 25 T.C. 81 (1955), with respect to a casual sale of personal property. The Tax Court was reversed, however, in Gilbert v. Commissioner, 241 F.2d 491 (9th Cir. 1957), holding, *inter alia*, the "initial payments" rule "intrinsically un-

reasonable." The statutory solution to the problem arrived with the 1954 Code. Section 453(b)(2)(A)(i) provides, with respect to casual sales of personalty and sales of realty, that no payments need be made in the year of sale. The Senate Committee on Finance set forth the change being made in the following language:

C. *Initial Payment Before Use of Installment Method (sec. 453(b))*

(1) House changes accepted by committee. Under present law, in order to use the installment method of reporting income in the case of sales of real property or casual sales of personal property some payment must be made in the year in which the sale occurs. There have been many legitimate transactions which could not be reported under the installment method merely because there was no payment in the year of sale.

The House and your committee's bill provide that in the future in the case of a sale of real property or a casual sale of personal property there need be no payment made in the taxable year in which the sale occurs.

(2) Change made by committee. The House bill required that in the year in which payments were first received, such payments could not exceed 30 percent of the selling price. This requirement would leave in doubt, for perhaps a number of years, the status of certain sales in which the initial payments are indefinite and are not payable until some time subsequent to the year of sale. Your committee's bill, therefore, provides that sales of realty and casual sales of personalty, *which otherwise qualify*, may be reported under the installment method if in the year of sale either no payments are received, or the payments in that year do not exceed 30

---

3. See, e. g., Regs. 86, Article 44–2 promulgated under the Revenue Act of 1934 and Regs. 118, § 39.44–2 promulgated under the Internal Revenue Code of 1939. See also G.C.M. 12148, XII–2 Cum.Bull. 57 (1933), the 1933 General Counsel's Memorandum construing the term "initial payments," which construction was effectively adopted by the Treasury in the regulations cited, *supra*.

percent of the selling price. [S.Rep. No.1622, 83rd Cong., 2d Sess., p. 64 (3 U.S.Code Cong. & Admin.News (1954) pp. 4621, 4695–4696).] [Emphasis supplied.]

We think it abundantly clear that the only change in the installment sales provisions made by section 453(b)(2)(A) was to eliminate the requirement, stated by the Treasury and agreed with by the Tax Court, of "initial payments" in the year of sale. There is no reference at all to the "multiple payments" requirement, an intrinsic aspect of the installment method provision itself. In fact, as stated by the Senate Committee on Finance, *supra*, even though the taxpayer need no longer pass an "initial payments" test, the installment method can be elected only for transactions "which otherwise qualify."

It was, of course, logically possible, prior to 1954, for a transaction not to qualify for installment method reporting because the sale failed to satisfy *both* the "initial payments" and also the "multiple payments" rules. However, the fact that Congress sought to extend installment method reporting to sales in which there were no payments made during the year of sale cannot be deemed evidence that Congress also intended to abrogate a far more fundamental rule, the requirement of multiple payments. It would even be more surprising to find that the rule of multiplicity should fall by inference.

Thus, plaintiff cannot rely on the fact that the Treasury Regulation for the 1939 Code, set out in the margin,[4] defining the term "initial payments," was not carried into the 1954 Code regulations.

This earlier regulation was directed specifically to the "initial payments" rule and thus it is perfectly clear that its deletion from the 1954 Code regulations was prompted by the change in the law with respect to the fact that payments in the year of sale were no longer a requirement for installment method treatment. The second sentence of the quoted portion of the Regulation is an example of the failure of the "initial payments" test. It also happens that the example fails the "multiple payments" test. However, this latter fact cannot be taken as an affirmative indication that a deferred "lump-sum installment" theory was being sanctioned.

The statute and regulations for the relevant period further confirm the necessity for something more than a deferred lump-sum sale transaction. Section 453(b)(1) states generally that the income from, *inter alia*, a casual sale of personal property—

> * * * may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

Plaintiff argues that only Treas.Reg. § 1.453–2(b)(1) *explicitly* requires at least two payments and that this provision is applicable only to sales by *dealers* in personal property. Plaintiff further argues that the regulation prescribing special rules for casual sales of personalty. (Treas.Reg. § 1.453–3) does not explicitly require two payments.

During the year in issue, Treas.Reg. § 1.453–3 read[5] as follows:

> § 1.453–3. *Special rules applicable to casual sales or casual dispositions*

---

4. Regs. 118, § 39.44–2, promulgated under the 1939 Code, read, in part, as follows: " * * * The term 'initial payments' contemplates at least one other payment in addition to the initial payment. If the entire purchase price is to be paid in a lump sum in a later year, there being no payment during the first year, the income may not be returned on the installment basis. Income may not be returned on the installment basis where no payment in cash or property, other than evidences of

indebtedness of the purchaser, is received during the first year, the purchaser having promised to make two or more payments in later years."

5. The body of what was, during the period of the sale involved herein, Treas.Reg. § 1.453–3 has since been added to Treas.Reg. § 1.453–1 as subparagraph (c)(4). Paragraph (c) was and is entitled "Limitation on the use of the installment method." See 37 Fed.Reg. 13531, July 11, 1972.

*of personal property.* Income shall be computed and reported separately for each casual sale or other casual disposition of personal property as *installment payments* are received in the year of sale and subsequent years. * * * [Emphasis supplied.]

Paragraph (b) of Treas.Reg. § 1.453–1, relevant to sales by dealers, casual sales of personalty, and sales of realty, states:

 (b) *Income to be reported.* (1) Persons permitted to use the installment method of accounting prescribed in section 453 may return as income from installment sales in any taxable year that proportion of the *installment payments* actually received in that year which the gross profit realized or to be realized when the property is paid for bears to the total contract price. * * * Gross profit, in the case of a sale of real estate by a person other than a dealer and a casual sale of personal property, is reduced by commissions and other selling expenses for purposes of determining the proportion of *installment payments* returnable as income. * * * [Emphasis supplied.]

We conclude that the many references to "payments" in regulations addressed, specifically or generally, to casual sales of personal property make it sufficiently clear that more than a single payment is required. The explicit reference of Treas.Reg. § 1.453–2(b)(1), set out in the margin,[6] with respect to the qualification of a two-payment installment as a "plan," equally serves another purpose, i. e., to resolve any doubt that, with respect to dealers, as few as two payments will satisfy the "plan" requirement.

 Finally, the structure of the statute itself confirms our view that multiple payments are called for. Section 453(b) provides that certain casual sales of personalty and sales of realty "may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a)." Thus, subsection (b) refers us to subsection (a) and to returning—

 * * * as income * * * in any taxable year that proportion of the *installment payments* actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. * * * [Emphasis supplied.]

We have already demonstrated, *supra,* that the regulations make it sufficiently clear that more than a single payment is required. Plaintiff has pointed out the theoretical possibility of applying the above formula to its case, 100 percent of the gross profit being reportable in the year of receipt of the full price. Thus, under plaintiff's theory, the statute would have us apply a formula to a situation for which we need only determine gain. We deem it far more likely that the phrase "basis and in the manner," *supra,* incorporates not only the mathematical formula of paragraph (a) but also the requirement therein of "*installment payments.*"

 Plaintiff has also made the argument that the Government is attempting a retroactive application of Rev.Rul. 69–462, 1969–2 Cum.Bull. 107. In that ruling the Internal Revenue Service advised that a taxpayer could not elect the installment method for reporting income from the sale of realty, the total purchase price being payable in a lump sum in a year subsequent to the year of sale. The plaintiff has argued that in the Revenue Ruling the Service changed its position, of many years standing, that a lump-sum installment sale was possible with respect to casual sales of personal

---

6. * * * * * * * *
 "(b) *Definition of sale on the installment plan.* The term 'sale on the installment plan' means—
 "(1) A sale of personal property by the taxpayer under any plan for the sale or other disposition of personal property, which plan, by its terms and conditions, contemplates that each sale under the plan will be paid for in two or more payments, or"
 * * * * * * * *

property and sales of real property. For the reasons outlined in this opinion, we disagree with plaintiff. The law has always been that "multiple payments" are a *sine qua non* for a qualification for the installment method. Further, no regulation or ruling by the Treasury or Revenue Service has sought to soften the rule, nor can any regulation or ruling fairly be interpreted as altering this intrinsic aspect of the installment provisions.

The remaining issue raised is the applicability of Treas.Reg. § 1.453–6 to a deferred payment sale of personal property. The plaintiff argues that, even if the installment method is not available for deferred lump-sum sales, it may nevertheless report gain from the sales of its player contracts on the "recovery of cost" method prescribed by Treas.Reg. § 1.453–6. This Regulation provides, in relevant part, as follows:

§ 1.453–6. *Deferred-payment sale of real property not on installment method.*

(a) *Value of obligations.* (1) In transactions included in paragraph (b)(2) of § 1.453–4, that is, sales of real property involving deferred payments in which the payments received during the year of sale exceed 30 percent of the selling price, the obligations of the purchaser received by the vendor are to be considered as an amount realized to the extent of their fair market value in ascertaining the profit or loss from the transaction. Such obligations, however, are not considered in determining whether the payments during the year of sale exceed 30 percent of the selling price.

(2) If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount thereof being the difference between the reduced basis as provided in the preceding sentence and the amount realized therefor. Only in rare and extraordinary cases does property have no fair market value.

\*       \*       \*       \*       \*       \*

It is the plaintiff's contention that it received nothing from the Royals and Pilots in its fiscal year ended October 31, 1968, other than a bare promise to pay the purchase price of the player contracts in plaintiff's next fiscal year, unsecured and evidenced only by the agreements of sale. Therefore, the plaintiff continues, it received no income from the player contract sales that it was required to return in fiscal 1968. Thus, the gain is only realized when the obligations of the Royals and Pilots were satisfied in fiscal 1969.

The Government contends that the Regulation does not apply to the instant state of facts since (1) the Regulation applies, by its very terms, only to sales of *real property*; (2) the plaintiff received one instead of two or more deferred payments; (3) the Regulation applies only to those situations in which the payments received during the year of sale exceed 30 percent of the selling price; and (4) the "recovery of cost" method is available only to cash basis, and not accrual basis, taxpayers. Finally, the Government argues that, even if the Regulation were to apply to the instant case, plaintiff could not prevail in its motion for summary judgment because of its failure to establish that as of October 31, 1968, the payments due in 15 days were without fair market value.

We do not find it necessary to discuss each of the contentions of the parties as it is our view that Treas.Reg. § 1.453–6 unambiguously applies only to sales of real property. While the plaintiff has attempted to argue that the absence of a reference in the Regulation to casual sales of personal property was an "oversight" or an "historical accident, not conscious policy," we have found no real indication that this is the case. In fact, not only does the title of the Regulation

("Deferred-payment sale of real property not on installment method") specifically indicate that only real property sales qualify, but the body of the section itself refers specifically to " * * * paragraph (b)(2) of § 1.453–4, *that is, sales of real property* involving deferred payments * * *."

Both the United States Tax Court and the Sixth Circuit Court of Appeals have decided the very issue before us adversely to the taxpayers there involved. In both George L. Castner Co., 30 T.C. 1061 (1958), and Jones Lumber Co. v. Commissioner, 26 CCH TCM 398 (1967), aff'd, 404 F.2d 764 (6th Cir. 1968), the courts held, *inter alia*, that Treas.Reg. § 1.453–6 and its predecessor provisions pertained only to deferred-payment sales of *real property*.

For the foregoing reasons, the Government's position is correct. Plaintiff has not met the requirements for either the installment method of section 453 or the recovery of cost method under Treas.Reg. § 1.453–6. Therefore, the plaintiff, as an accrual basis taxpayer, must recognize its entire gain on the sales in fiscal year ended October 31, 1968, as properly computed by the Government. See, generally, Treas.Reg. § 1.446–1(c)(1)(ii) and Treas.Reg. § 1.-451–1(a). Plaintiff's motion for partial summary judgment is denied, defendant's cross-motion for partial summary judgment is granted, and Count II of the petition is dismissed.

## CONCLUSION

Upon the foregoing opinion, which contains the essential findings of fact, the court concludes as a matter of law that the plaintiff is not entitled to recover on Count II of its petition, and Count II of the petition is therefore dismissed.

DAVIS, Judge (dissenting):

Section 453(b) ["Sales of realty and casual sales of personalty"], as enacted in the 1954 Code, is a murky piece of legislation which does not use the terms "installment method" or "install-ment plan" but harks back, in imprecise and uncertain fashion ["on the basis and in the manner prescribed in subsection (a)"], to subsection (a) which applies only to a dealer regularly selling on the "installment plan". In addition, the relevant legislative history of subsection (b) is most unclear and subject to varying interpretation. This is the kind of statute which cries out for supplementation and clarification by regulation, and indeed Congress specifically provided, within the subsection, for just such regulations to be promulgated. New regulations were in fact issued under the 1954 Code provision, and to my mind this case depends, not on the statute itself, but on the content of those regulations as they existed in 1968 when plaintiff acted.

Accordingly, my two differences with the court concern, first, the minimum statutory requirements which Congress itself imposed in 453(b) as the rock-bottom preconditions (apart from what could permissibly be required by regulation), and, second, the extent to which the Treasury had properly added to those core Congressional requirements by the time of plaintiff's disposition in the fall of 1968. My position on these questions is: (1) section 453(b) does not mandate, by its own statutory force, a multiple payments requirement; (2) the subsection does, however, authorize the Treasury to impose such a precondition if it wishes, or conversely to omit it; (3) until Rev.Rul. 69–462, 1969–2 Cum.Bull. 107 (adopted in 1969), the Treasury did not establish such a requirement; and (4) Rev.Rul. 69–462 cannot validly be applied, retroactively, to taxpayer's 1968 transaction:—

(1). I do not read subsection (b) as imposing, of its own statutory force, the mandatory precondition of multiple payments. That element is certainly not one spelled out in the text of the provision; the only requirements Congress specifically mandated for casual dispositions of personal property are that (i) the price exceed $1,000, and (ii) either there be no payments in the year of dis-

position or those payments not exceed 30 percent. Nor, in the light of the wording and of the subsection's history, is there need or warrant for implying the statutory condition that there must necessarily be more than one payment. The subsection, as I have noted, does not contain the word "installment", and the reference back to subsection (a) can readily be understood as simply referring to the formula in (a)(2). Moreover, in the days before the 1954 Code the multiple payments requirement was twin, in birth and development, to the condition that the initial payment be in the year of sale. The latter was deliberately erased in 1954, and, though nothing express was said about its brother, the deletion of the "initial payments" language, to which both requirements were closely tied, seems to me to remove the ground for inferring an obligatory precondition of multiple payments from the mere fact that section 453 deals, in general, with "installment" transactions. The early official pronouncement in G.C.M. 12148, XII–2 Cum.Bull. 57, 58 (1933), had expressly equated "installment sales" and sales "on the installment plan" with the "initial payments" provision.[1] *See, also,* E. M. Funsten, 44 B.T.A. 1166, 1169 (1941), *acquiesced in*, 1941–2 Cum.Bull. 5. With that part of the legislation removed, the status of the multiple payments requirement was left at large.[2]

(2). Although section 453(b) does not itself impose a mandatory requirement of multiple payments, it is broad and general enough to authorize the Treasury, in its discretion, to do so—or to decline to do so. The internal grant of power to issue regulations shows the width of the administrative discretion. Added to that authorization are the opaque terms of the subsection and its muddy legislative history, elements suggesting that Congress may well have been quite uncertain of the reach of the provision and therefore amenable to fuller administrative power which might, or might not, take account of past practices (other than the requirement of an "initial payment"). The very materials and points which the majority use to show that subsection (b) itself establishes a multiple payments requirement seem to me to demonstrate, rather, that Congress left that option wholly to the Treasury, not foreclosing either result. If, directly after the enactment in 1954 of subsection (b), the regulation-drafters had put the substance of Rev.Rul. 69–462 into regulatory form, I feel certain that would have been a valid exercise of authority. On the other hand, if the implementing regulations had explicitly declared that for the future a single deferred payment (within the statutory dimensions) was to be sufficient, that too would have been proper administrative action.

(3). What did the Treasury actually do? Taxpayer has a good case that, whatever the department may have subjectively intended, the regulations issued under the 1954 Code communicated the notion that a single deferred payment was now being covered under section 453(b) (if otherwise within the provision). First, the regulation (Treas.Reg. §§ 1.453–1, 1.453–2) recognizes throughout a clear distinction be-

1. " * * * the regulations of the Bureau imply that the only test of whether a sale is 'on the installment plan' is whether the 'initial payments' exceed the percentage of the selling price specified in the statute. * * * Moreover, even if this implication were not in the regulations, there is no express requirement in [the 1926, 1928, or 1932 legislation] that casual sales of real property * * * [be] 'installment sales' in order to permit the return of income on the installment basis, the only requirement in the statutes being that the 'initial payments' must not exceed [a specified] percent of the selling price * * *."

2. The scraps from the legislative history of section 453 on which defendant calls can be easily interpreted as referring either to the prior "initial payments" provision or to deferred-payment contracts failing to meet the statutory conditions as to magnitude—not to multiple payments *per se*. There is nothing in the history which points directly or clearly to maintenance of the multiple payments requirement, let alone the obligatory continuance of that condition.

tween dealer and non-dealer sales. As to the former, the directive refers to "the installment plan" and expressly requires that the sale be "paid for in two or more payments." For non-dealers like plaintiff, there is no such stated condition of multiple payments; moreover, the references to "installment method", "installment payments", and "installment sales"—the words in the regulation which defendant stresses as incorporating a multiple payments precondition for non-dealers—are phrases which under the long-standing ruling in G.C.M. 12148, *supra* note 1, are not to be defined by the dictionary but are, instead, simply technical short-hand expressions for sales meeting the specific statutory conditions relating to the magnitude of the payments. *See* 2 J. Mertens, The Law of Federal Income Taxation § 15.08, at 23–24 (1967 ed.).

Second, the Treasury deleted from the 1954 regulations a sentence, carried in the regulations from 1935 to 1954, which explicitly said: "If the entire purchase price is to be paid in a lump sum in a later year, there being no payment during the first year, the income may not be returned on the installment basis." We are told that this was removed because of the excision of the "initial payments" requirement, but under the defendant's present view the sentence would still be quite correct, despite the removal of the "initial payment" language, and I can see no good reason for leaving it out entirely if the multiple payments condition was being continued. A knowledgeable taxpayer would be bound to notice and give meaning to the deliberate omission of this old provision,

especially since the former multiple payments condition was so closely connected with the "initial payment" phrasing now taken out of the statute.

Whatever the regulation-drafters may have intended, the language they actually used, the failure to be explicit, the significant distinctions they made between dealers and non-dealers (including the express multiple payments requirement for the former), the omission of the crucial sentence from the previous regulations, the continued existence of G.C.M. 12148, all combine to make the taxpayer's reading, as of 1968, not only reasonable but preferred. *Cf.* Lewis M. Ludlow, 36 T.C. 102, 108 (1961), *acquiesced in,* 1961–2 Cum.Bull. 5.[3]

The Treasury should bear the risk of making its demands clear. *Cf.* Fruehauf Corp. v. United States, 477 F.2d 568, 574, 201 Ct.Cl. ——, —— (1973) (concurring opinion). In this instance it wholly failed, until 1969, if its aim was to continue for non-dealers the requirement of multiple payments. Particularly with a mechanical and ritualistic obligation of this type—which serves no useful economic or tax purpose anyone can conjure up[4]—should the Government be at pains to be exact and clear. A taxpayer planning a transaction should be adequately informed in advance of what i's to dot and t's to cross. The penalty for omitting a purely technical step is too drastic to allow the Treasury to slide by with unduly general, ambiguous, and misleading regulations which are then interpreted by the Service, after the event, to contain precise requirements a normal reader is unlikely to find in them.[5]

---

3. The recent Tax Court decision in 10–42 Corporation, 55 T.C. 593 (1971)—upholding the Government's stance—does not discuss the changes in the regulations from pre-1954 days, and we are told that these and other pertinent materials were probably not called to the court's attention.

4. So far as I am aware, no real substantive purpose is served by the multiple payments requirement, limited as it is to two payments. Plaintiff could have met it, if it had been warned, by arranging for two

payments, instead of one, in November 1968 or October-November 1968. Apparently one of the payments could even be a nominal one dollar. G.C.M. 12148, *supra.*

5. The report of the House Ways and Means Committee preceding the Tax Reform Act of 1969, 83 Stat. 487, says that the committee was concerned "with the uncertainty in present law as to the number of installment payments which are required in order for a transaction to be eligible for the installment sales method." Al-

(4). The Internal Revenue Service did finally make its position clear in 1969 in Rev.Rul. 69–462, but this came about a year after taxpayer's transaction in October 1968. Since to me this was a decided change in the pre-existing administratively-imposed requirements, it is plain, on my view, that the new ruling could not fairly or validly be retroactively applied to plaintiff's case. *See* Crespo v. United States, 399 F.2d 191, 185 Ct.Cl. 127 (1968); International Business Machines Corp. v. United States, 343 F.2d 914, 170 Ct.Cl. 357 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966); Chock Full O'Nuts Corp. v. United States, 453 F.2d 300, 302–303 (C.A.2, 1971), Future sellers would be appropriately alerted by the new ruling, but not plaintiff. It is entitled to have applied to it the regulations as they stood in 1968, and not as they were *de facto* amended in 1969 to add a significant additional requirement.

KUNZIG, Judge, joins in the foregoing dissenting opinion.

though it decries the application of the installment provisions to such transactions, the report appears to recognize that under the then prevailing practice the method was being allowed "where there is only one installment payment [as here] or only a limited number of payments", in-

cluding "when the one installment payment is deferred for a long period of time." H.R.Rep.No.91–413, Part 1, 91st Cong., 1st Sess. 108 (1969–3 Cum.Bull. 200, 267), U.S.Code Cong. & Admin.News 1969, p. 1756.