John Howard BURBAGE, Appellant,

and

Rosalind A. Burbage, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 84–2224.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1985.

Decided Oct. 10, 1985.

William S. Glading, Washington, D.C. (D. Paul Alagia, Jr., Richard A. Gladstone, Barnett & Alagia, Washington, D.C., on brief), for appellant.

Steven Frahm, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Robert A. Bernstein, Washington, D.C., on brief), for appellee.

Before WIDENER, WILKINSON and SNEEDEN, Circuit Judges.

WIDENER, Circuit Judge:

Taxpayer appeals the decision of the Tax Court, 82 T.C. 546, in which the court determined that pursuant to a notice of deficiency sent to taxpayer in 1979, within six years of his 1972 tax return filing, an assessment of deficiency for 1972 was not barred by the general three-year statute of limitations because taxpayer omitted from gross income an amount properly includible therein which was in excess of 25 percent of the amount of gross income stated in the 1972 return. We affirm.

John Howard Burbage (taxpayer) filed his 1972 income tax return on April 15, 1973 and listed $267,340.05 as gross income. The Commissioner of Internal Revenue issued taxpayer a notice of deficiency on April 13, 1979, stating that taxpayer was liable for an additional income tax of $51,367.27 for 1972 because he had failed to take into account $144,180 in long-term capital gain realized in a 1972 taxable exchange of property. The Tax Court found that the exchange was taxable and that the fair market value of the property received by taxpayer in the exchange was $180,000. Considering taxpayer's basis of $35,820, the court found that taxpayer had omitted $144,180 in gross income in 1972 and that this amount was in excess of 25 percent of his total gross income of $267,340.05. Accordingly, the court held that while the assessment action was barred under the three-year statute of limitations, *see* IRC § 6501(a) (26 U.S.C.), the action was proper under the six-year statute of limitations applicable to cases in which the taxpayer has omitted from gross income an amount that is in excess of 25 percent of the amount stated in the return. *See id.* § 6501(e)(1)(A).

The central issue before the Tax Court and before us on appeal concerns the fair market value of the property taxpayer received in the 1972 taxable exchange. Taxpayer argues that the Tax Court erroneously placed a value on the property that was too high and that, as a result, the Commissioner failed to meet its burden of proof under IRC § 6501(e)(1) to show that taxpayer omitted greater than 25 percent of the amount of gross income stated in his 1972 return. Notwithstanding taxpayer's attempt to couch the issue of this appeal in terms of burden of proof, the substance of this dispute turns on whether or not the Tax Court's finding that the fair market value of the property was $180,000 is clearly erroneous. The Tax Court did not discuss, discreetly, burden of proof, and we

have no reason to think it applied the rule erroneously.

The facts which gave rise to this tax dispute briefly follow. In 1969, taxpayer acquired for $35,820 a fee simple interest in two oceanfront lots in Ocean City, Maryland. Some time thereafter, Larmar Corporation (Larmar) began plans for the development of a 1.25 million dollar oceanfront condominium project. Taxpayer's property, however, was located directly between the ocean and the property on which Larmar intended to build the condominiums. Because Larmar did not want taxpayer's oceanfront property to be developed, Larmar and taxpayer entered into a long-term lease agreement characterized by the parties as a redeemable ground rent lease under Maryland law. *See* Md.Real Prop.Code Ann. § 8–110(b). Under the terms of the lease, the parties agreed that it would run for 99 years and that it would be perpetually renewable. The annual rent under the lease was $10,800. Taxpayer retained only the right of reentry upon Larmar's failure to comply with the terms of the lease. Larmar additionally had the right to terminate the lease by exercising its option of redemption under Maryland law. When the parties executed the lease, Maryland law then provided that the redemption price for a redeemable ground rent was determined by capitalizing the annual ground rent at a rate of 6 percent. *See* Md.Ann.Code art. 21, § 8–102(b) (1957) (recodified at Md.Real Prop.Code Ann. § 8–110(b)) Accordingly, by exercising its redemption option, Larmar, under the terms of the agreement, could purchase the property outright[1] by paying taxpayer $180,000, irrespective of the amounts previously paid as annual rent.

The Tax Court determined that taxpayer's transfer of the oceanfront property for the redeemable ground rent lease constituted a taxable sale or exchange under IRC § 1055(a) and Treas.Reg. § 1.1055–1–4 (26 C.F.R.) and, in accordance with those provi-

---

**1.** Under Maryland law, Larmar could exercise the redemption right at any time after the expiration of three years from the date the lease was executed. Md.Ann.Code art. 21, § 8–102(c) (1957) (recodified at Md.Real Prop.Code Ann. § 8–110(c)).

sions, taxpayer was deemed to have sold the oceanfront property on the date of the lease subject to a mortgage in the face amount of $180,000, the redemption price of the land. While taxpayer contested below whether or not the lease transaction was taxable under IRC § 1055(a), he has conceded on appeal that the exchange was taxable. As stated earlier, the central issue before us concerns the fair market value of the redeemable ground rent lease that taxpayer received in the exchange.

For the purpose of ascertaining gain (or loss) recognized on the receipt of a ground rent, Treas.Reg. § 1.1055–2 provides that the general recognition provisions of IRC § 1001 shall apply. Treas.Reg. § 1.1055–2. Under IRC § 1001, gain from a sale or exchange is the amount by which the amount realized exceeds the adjusted basis. IRC § 1001(a). The amount realized includes the sum of any money received plus the fair market value of the property (other than money) received. *Id.* § 1001(b). Since taxpayer received only the ground rent in the exchange, his amount realized is equal to the fair market value of the ground rent.

The determination of the fair market value of the ground rent, treated as a mortgage under IRC § 1055(a), was a question of fact, *see Wells Amusement Co. v. Commissioner,* 70 F.2d 208, 212 (4th Cir.1934), and we must affirm the Tax Court's finding in this regard unless it was clearly erroneous. *Commissioner v. Duberstein,* 363 U.S. 278, 291 & n. 13, 80 S.Ct. 1190, 1200 & n. 13, 4 L.Ed.2d 1218 (1960). A finding is clearly erroneous if, after a review of the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

▮ Upon consideration of the entire record, we do not have a definite and firm conviction that a mistake has been made.

The Tax Court found that the ground rent treated as a mortgage had a fair market value equivalent to its face amount (redemption price) of $180,000. Although taxpayer contends that based on the testimony of his expert witness the fair market value of the ground rent was $32,800, we believe there is sufficient evidence to support the Tax Court's finding on this issue. In making its determination, the court considered the fair market value of the oceanfront property which taxpayer gave up in the exchange as indicative of the fair market value of the ground rent received. The court found that the fair market value of the property securing the payments under the ground rent lease was $180,000 since this was the price at which Larmar could purchase the property outright or the price at which the property could be sold in full satisfaction of Larmar's obligations under the lease in the event of default. Additionally, the Tax Court noted that it was unlikely that Larmar would default since Larmar could not afford to lose its hold over the oceanfront property. Based on the foregoing, the court found that it was highly probable that taxpayer would receive all payments under the ground rent lease and that the mortgage (lease) had a fair market value equal to its face amount (redemption price).

Taxpayer asserts that while the fair market value of the oceanfront property was relevant on the issue of the fair market value of the ground rent which taxpayer received, it should not have been the determinative factor. In this respect, taxpayer argues that the Tax Court should have focused on several factors concerning the fair market value of the ground rent rather than having confined its inquiry to the value of the oceanfront property. He claims further that despite the court's reliance on its oceanfront property valuation, there is no evidence to support its finding that the property was worth $180,000 since he takes the position that the Commissioner's expert testified that the fair market value of the property was only $109,000.

Whether or not it was proper for the Tax Court to base its valuation of the ground rent primarily upon its valuation of the oceanfront property is an issue we need not decide since we think there is sufficient evidence in the record to support the finding that the ground rent had a fair market value of $180,000.

While the Commissioner's expert testified that the oceanfront property was worth $109,000, between parties with no other interests to protect, rather than $180,000, the court nevertheless found the higher valuation based on its consideration of the fact that since the property was ideally located between the ocean and the condominium project, the seller could receive a premium on the price of the property. This, we believe, is a determination of market value which was within the discretion of the court, viewing all the circumstances of the case.

Apart from the inquiry regarding the market value of the oceanfront property exchanged, we think there is other evidence which supports the $180,000 ground rent valuation. Various terms of the lease indicate the value the parties placed on taxpayer's right to receive $10,800 annually. The parties agreed that the capitalized value of the lease was $180,000, and that in the event of condemnation, taxpayer would be entitled to any condemnation award up to an amount of $180,000. The parties further agreed that if condemnation should occur, the capitalized value of the lease would be reduced by the amount of the award and rental payments would be reduced by 6 percent of the amount of the award. We think these provisions are strong indications the parties agreed that taxpayer's right to receive $10,800 annually was worth $180,000.

Accordingly, we hold that the Tax Court's finding of fair market value of the ground rent was not clearly erroneous.

■ We also hold the Tax Court correctly adopted the Commissioner's computation of taxpayer's 1972 tax deficiency in the amount of $51,367.27 because taxpayer was not entitled to elect the installment method of reporting gain under IRC § 453. After the Tax Court filed its decision holding the ground rent transaction to be taxable exchange, taxpayer made an election under IRC § 453 to report the gain from the exchange under the installment method, claiming no deficiency for 1972. Without deciding whether this election was timely or otherwise allowable, we do not think that taxpayer is entitled to installment sales treatment because the ground rent, viewed as a mortgage, calls for a single lump-sum payment, if any, of the sales price in the future. Since the annual rental payments are interest rather than principal and in no way accrue toward the purchase price, *see* IRC § 163(c), and since the ground rent calls for only one payment of principal at the time of redemption, installment sales treatment is not available to taxpayer. *See* IRC § 453(a), (b) prior and subsequent to 1980 amendment. Prior to the 1980 amendment, which provides that only one payment need be made in a year after the close of the taxable year in which the disposition occurred, more than one payment was required. A minimum of two payments were required for an installment sale. *Baltimore Baseball Club v. United States*, 202 Ct.Cl. 481, 481 F.2d 1283, 1286 (1973).

The judgment of the Tax Court is accordingly

AFFIRMED.