IVAN D. POMEROY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5854–68. Filed September 2, 1970.

Ivan D. Pomeroy, pro se.
*Sheldon M. Sisson,* for the respondent.

OPINION

*Issue 1.   Election to Report Sale on Installment Method*

The respondent contends that the petitioner, having elected the installment method of reporting income from the sale of real estate in the taxable year 1965, which was an acceptable method although the computation was inaccurate, is bound by the election and he cannot afterward, upon audit, renounce the method and choose a different one. Petitioner, in opposition, maintains that since the method of reporting the sales transaction in controversy did not reflect his true intent and actual receipts therefrom, such method should be set aside and a more appropriate method adopted. We disagree with petitioner.

In 1965, petitioner sold a residence previously held for income-producing purposes for a total sales price of $11,500; and on a page attached to his return stated that he elected to treat the disposition as an "installment sale." [2] He then computed the gross profit on the transaction and incorrectly included only $1,000 as the recognized gain to be reported in the taxable year 1965. Respondent in his statutory notice in effect determined that an election to report the disposition on the installment method had been made and that the election was permissible. Only petitioner's computation of the recognized gain was challenged. When petitioner was faced with the prospect that the correct amount of realized gain was $3,123.09 (which was greater than the cash downpayment he had received), he insisted that he had made no installment election, but rather had entered into an "open contract account," i.e., a sale in which the ultimate amount realized is not ascertainable since no fair market value can be ascribed to the purchase agreement. In the same vein, he urges that his 1965 return merely reported the receipts of an unsecured contract "in escrow" to sell real estate which was still "an open deal." Also, petitioner argues that if he perchance elected any method, it was the deferred-payment method of reporting gain, a method which permits the tax-free recovery of basis prior to reporting gain under section 1.453-6(a)(2), Income Tax Regs.

Section 453, I.R.C. 1954, provides in material part as follows:

SEC. 453. INSTALLMENT METHOD.

    (b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

        (1) GENERAL RULE.—Income from—

---

[2] On a separate page designated Schedule D, petitioner set forth a detailed statement relating to the sale of the property involved, noting that he was "electing to treat as an installment sale" the transaction and that he had received an "installment" of $1,571 in 1965.

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (*under regulations prescribed by the Secretary or his delegate*) be returned on the basis and in the manner prescribed in subsection (a). [Emphasis supplied.]

Section 1.453-8(b), Income Tax Regs., promulgated September 17, 1958, in accordance with the foregoing statute, provides in part as follows:

(b) *Sales of real property and casual sales of personal property.* (1) A taxpayer who sells or otherwise disposes of real property, or who makes a casual sale or other casual disposition of personal property, *and who elects to report the income therefrom on the installment method* must set forth in his income tax return (or in a statement attached thereto) for the year of the sale or other disposition the computation of the gross profit on the sale or other disposition under the installment method. In any taxable year in which the taxpayer receives payments attributable to such sale or other disposition, he must also show in his income tax return the computation of the amount of income which is being reported in that year on such sale or other disposition. [Emphasis supplied.]

This regulation has specifically been held to be a reasonable implementation of section 453, *supra*, and valid. *Ackerman* v. *United States*, 318 F. 2d 402 (C.A. 10, 1963). Since all of the criteria needed to satisfy section 1.453-8(b), *supra*, appeared on the page attached to petitioner's 1965 return, we must conclude and find as a fact that he has exercised the option granted to him by law to report the gain derived from the transaction in question upon the installment basis.

Although Pomeroy testified that he "didn't elect any method" in reporting the transaction involved, we believe that he consciously adopted the installment method and his choice was made with consideration of the relative merits of other methods available to him. Viewing his choice with hindsight, the installment method apparently turned out to have been chosen to his disadvantage. Howbeit, he cannot now reverse such action and insist upon a recomputation of his liability upon the so-called "open contract account" basis or deferred-payment method. Moreover, petitioner's reliance on the latter method is inconsistent with his return. Petitioner's adjusted basis was $4,851, and the computation attached to his 1965 return shows receipts of only $1,571.10. Since $1,000 was included in taxable income on Schedule D of his return, his claim that the deferred-payment method was actually intended and used is without substance. Even if the explicit statements in Pomeroy's return with respect to his election of the installment method were ignored and we held that he is entitled to use the deferred-payment method, there would be a greater gain recognized in

his taxable year 1965 than reported. Although Pomeroy would have been entitled to use the deferred method of reporting the disposition under review, he elected otherwise, and his endeavor to take advantage of that method now comes too late. In view of our holding, it is unnecessary to consider whether respondent's computation of gain under the deferred-payment method was correct.

In *Pacific National Co.* v. *Welch*, 304 U.S. 191 (1938), the taxpayer elected the deferred-payment method in an appropriate situation where it clearly and properly reflected his income. He later wished to recompute the gain on the installment method. Either method could have been used. The Supreme Court held that the taxpayer had chosen a method which did not minimize his tax liability, but this alone did not suffice to permit him to make a subsequent recalculation where the method originally chosen did not reflect income. It was conceded that if the taxpayer could recompute, it would result in lower taxes but the Court said the method used by the taxpayer fairly reflected income. The Supreme Court also stated at pages 194–195 :

Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns * * *. There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method. By reporting income from the sales in question according to the deferred payment method, petitioner made an election that is binding upon it and the commissioner.* [Footnote omitted.]

To the same effect, see *Jacobs* v. *Commissioner*, 224 F. 2d 412 (C.A. 9, 1955), affirming 21 T.C. 165 (1953) ; *Marks* v. *United States*, 98 F. 2d 564, 567 (C.A. 2, 1938) ; *United States* v. *Kaplan*, 304 U.S. 195 (1938).

In support of his position, petitioner relies, *inter alia*, on *Mamula* v. *Commissioner*, 346 F. 2d 1016 (C.A. 9, 1965), reversing 41 T.C. 572 (1964). We have carefully considered *Mamula* and the other cases cited by petitioner and find them inapposite. *Mamula* concerns an improper election when the return was filed and not an adjustment in a computation of a valid and acceptable method of reporting realized gain. In *Mamula* the taxpayer was not conclusively bound by his own election to report profit from the sale of real estate properties in a certain manner because it was a "nonallowable choice," and the improper method had to be set aside at the insistence of the Government and new calculations of necessity had to be undertaken. Relying on *Pacific National Co.* v. *Welch, supra*, the Court of Appeals in *Mamula* stated at page 1018 that :

Once a taxpayer makes an election of one of two or more alternative methods of reporting income, he should not be permitted to convert, of his own volition,

when it becomes evident that he has not chosen the most advantageous method. * * *

Here, petitioner did make a permissible election on his return and only his computation of gain is disputed by the respondent. Having thus made that election, petitioner may not now change his position.

We find no merit in petitioner's argument that his 1965 return merely reported the receipt of an "open contract account" to sell real estate on the ground that the first mortgage payable to A. B. Robbs Agencies in the amount of $6,720.21 had not been actually assumed by the Johnsons. Essentially, it is petitioner's position that the sales transaction involved was open or uncompleted because the buyers had not met the eligibility requirements of the lender and the FHA with respect to the first mortgage, and because of the lack of any collateral (other than the realty involved) to assure that the outstanding mortgages would ever be paid. In this connection, petitioner avers that respondent in his computation of gain on the transaction in controversy improperly treated the agreement of the Johnsons to make monthly payments of $34.20 on the first mortgage as the receipt of the remaining principal balance thereof ($6,720.21) and monthly payments of $24 per month on the second mortgage at full face value ($3,279.79), despite the fact that the sales agreement of March 15, 1965, had no fair market value.

Initially, we recognize that the agreement in question does not provide for any notes or other evidence of indebtedness to be signed by the Johnsons; and the first mortgage dated December 21, 1954, has not been released by the payee or any assignee. However, we deem it significant that the Johnsons specifically assumed and agreed to pay the first mortgage and to make the monthly payments directly to the holder of the mortgage note, the Continental National Bank; and that the buyers accepted responsibility to pay realty taxes and fire insurance on the property involved. Also, it is noteworthy that the Johnsons were to take possession of the property and continue in such possession for and during the life of the agreement; and that they resided therein at the time of the instant trial. Furthermore, in explaining this transaction on his 1965 return, petitioner stated that the Johnsons "assumed" the first mortgage.

Under petitioner's argument in the long run, he would include in income only $1,500 cash and $3,279.79 (in monthly payments of $24) or a total of $4,779.79, which would not reflect the actual sales price of the property. Respondent acknowledged that the Johnsons' promise to pay the second mortgage ($3,279.79) to Pomeroy was not secured by any evidence of indebtedness and in his recomputation of Pomeroy's income for 1965 has included only his

actual receipts in that year. Thus, respondent included as payments received in the year of sale the $1,500 cash downpayment, $1,869.21 representing the excess of the first mortgage over the adjusted basis, and $47.74 paid on the second mortgage, or a total of $3,416.95. Since the first mortgage payment of $34.20 was and is paid directly to the holder of the first-mortgage note, it is difficult to understand how or when petitioner proposes to include the total purchase price of $11,500 in his income. It is precisely this situation that led to the predecessor of section 1.453–4(b)(1) and (c), Income Tax Regs.[3]

Strictly speaking, the legal title to the property involved was to be held in escrow by the title company until the buyers complied with all of the terms of the contract of sale, including the payment of the mortgages. Nevertheless, in reality, the buyers took possession of the property, exercised many of the indicia of ownership, and apparently made all of the mortgage payments which were due under the agreement. That Pomeroy and the Johnsons may have attempted to circumvent the requirements of the FHA (the guarantor of the first mortgage) for the assumption of the first mortgage by a purchaser of the property does not alter the fact that for all intents and purposes the Johnsons assumed the existing first mortgage and agreed to make periodic payments to the holder thereof. In our view, petitioner was the beneficiary of the payments made and to be made to the holder of the first mortgage in as real and substantial a sense as if the money was paid to him and then paid by him to his creditor. Petitioner, who has the burden of proof, did not present any of the parties connected with the sale to testify as to the underlying circumstances of their agreement, and in the absence of any affirmative evidence to the contrary, we are satisfied that the contract of petitioner and the Johnsons was a closed transaction and the first mortgage was assumed by the latter and properly included in the amount realized. See *Crane* v. *Commissioner*, 331 U.S. 1 (1947).

In the light of the foregoing, and the record as a whole, we hold that petitioner elected to report the gain on the transaction involved herein on the installment method and under the circumstances, the election is binding. *Samuel Pollack*, 47 T.C. 92, 112–113 (1966), affd. 392 F. 2d 409 (C.A. 5, 1968).

*Issue 2. Addition to Tax for Failure to File Timely Return*

Respondent imposed a 5-percent addition to tax under section 6651(a) of the 1954 Code.[4] Petitioner's failure to file his return on time may not have been due to willful neglect; however, in order to avoid the addition, he must prove the failure was due to reasonable cause. Sec. 301.6651–1(a)(3), Proced. & Admin. Regs.[5] Whether a failure to timely file a return was due to reasonable cause is essentially a question of fact and the burden of proof is upon the petitioner. *Eleanor C. Shomaker*, 38 T.C. 192 (1962).

Petitioner's position reduces itself to the argument that he was unable to obtain adequate assistance in preparing his return and could not ascertain the most advantageous method of reporting the sale of his property in 1965 up until "the last moment." We think it obvious that such fact does not constitute reasonable cause for failure to file timely. Ignorance of the plain and unambiguous provisions of the statute and regulations prescribing the time for filing returns cannot be considered reasonable cause. *Stevens Bros. Foundation, Inc.*, 39 T.C. 93, 129 (1962); *Andre Picard*, 28 T.C. 955 (1957); *Walter M. Joyce*, 25 T.C. 13 (1955). The sale in question took place in March 1965, and his return for that year was due in April 1966. Petitioner had more than a year to decide how to report the transaction. If there were valid reasons for delay, an extension could have been requested. No such request was made. Waiting 13 months to obtain adequate assistance (which apparently was not obtained) in deciding how to report the disposition, in our opinion, is not "ordinary business care and prudence." Sec. 301.6651–1(a)(3), *supra*.

---

[4] SEC. 6651. FAILURE TO FILE TAX RETURN.

(a) ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

[5] Sec. 301.6651–1(a)(3), Proced. & Admin. Regs., provides in material part as follows:

If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause.

Petitioner further contends that under section 6651(b) of the 1954 Code [6] he is entitled to a setoff against any tax due for the taxable year 1965 because of an overpayment in 1963. In our view the refund due in the alleged amount of $1,677 (shown on petitioner's unaudited amended return for 1963 filed on April 21, 1966) mentioned in his letter dated April 25, 1966, to the district director of internal revenue, Los Angeles, Calif., is not a part of the tax paid for the year 1965, and may not be claimed as a credit for the taxable year 1965 under section 6651(b), *supra. Phillips* v. *Stoepler*, 421 F. 2d 105 (C.A. 6, 1970). A Form 870 executed in 1967 by petitioner has no relevancy to the correct reporting of the 1965 sale or to whether there was an overpayment for the year 1963 which petitioner specifically elected to be applied as a credit against his estimated tax for the taxable year 1965. Sec. 301.6402–3(b), Proced. & Admin. Regs.[7] Accordingly, respondent's imposition of the addition to tax must be sustained.

*Decision will be entered under Rule 50.*

---

[6] Sec. 6651(b) of the 1954 Code provides that:

(b) PENALTY IMPOSED ON NET AMOUNT DUE.—For purposes of subsection (a), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed upon the return.

[7] Sec. 301.6402–3 Special rules applicable to income tax.—

(b) A properly executed individual, fiduciary or corporation income tax return shall, at the election of the taxpayer, constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return. * * * An election to treat the return as a claim for refund or credit shall be evidenced by a statement on the return setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer or shall be applied as a credit against the taxpayer's estimated income tax for the taxable year immediately succeeding the taxable year for which such return is filed. * * *