GIMBEL BROTHERS, INC.

v.

The UNITED STATES.

No. 491–71.

United States Court of Claims.

May 12, 1976.

John Wilcox, New York City, atty. of record, for plaintiff. Chadbourne, Parke, Whiteside & Wolff, George E. Zeitlin, and Leslie J. Schreyer, New York City, of counsel.

Robert N. Dorosin, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser Jr. and Robert Markham, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS and KASHIWA, Judges.

## OPINION

KASHIWA, Judge:

This action comes before us on a stipulation of facts. The essential facts stipulated are recited below. This action arises under the Internal Revenue Codes of 1939 and 1954 for the taxable years ended January 31, 1952, through January 31, 1966, inclusive.

We hold for the plaintiff for reasons hereafter stated.

Plaintiff is engaged in the business of selling merchandise through department stores. It qualified as a "dealer in personal property" within the meaning of the installment sale provisions of the Internal Revenue Codes of 1939 and 1954. In its return for 1952 plaintiff elected to use the install-ment method to report income from its installment sales as allowed under § 44(a) of the 1939 Code (hereafter § 44(a) ). For 1952 and all the other years in issue, plaintiff reported on the installment method all of its income from installment sales, except income from some of its sales on the revolving credit plan. It was then the policy of the Internal Revenue Service that sales on the revolving credit plan did not qualify for installment reporting. The Service's policy was later changed in response to a court decision [1] and plaintiff's erroneous reporting was later corrected in timely filed refund claims.

During the years in issue plaintiff regularly sold merchandise for cash and under numerous credit plans. The names and details of the credit plans varied from store to store and from year to year. In its books and records plaintiff grouped its credit plans into several categories which it labeled as follows:

1) regular retail accounts
2) regular deferred payment accounts
3) general merchandise credit coupon accounts
4) rotating charge accounts
5) continuous budget accounts [2]

Each of those categories included several credit plans with varying details but with common basic characteristics.

1. *Consolidated Dry Goods Co. v. United States,* 180 F.Supp. 878 (D.Mass.1960). The change was effected by amended regulations issued in T.D. 6682, 1963–2 Cum.Bull. 197.

2. 1) Regular retail accounts were general charge accounts properly reported on the accrual method.

2) Regular deferred payment accounts required execution of a separate contract for each sale of merchandise. Payment was made in two or more installments. Plaintiff retained a security interest in the item. This account income was properly reported on the installment method.

3) General merchandise credit coupon accounts allowed a customer to obtain coupons or certificates which he could then use to purchase merchandise as if the coupons were cash. On receipt of his billing statement, the customer had the option of paying the full cash price for all coupons received or of making monthly installment payments of a portion of the balance due. This account income was properly reported on the installment method.

4) Rotating charge accounts and continuous budget accounts had substantially similar characteristics. Continuous budget accounts apparently were an outgrowth of regular deferred payment accounts, which may explain why plaintiff reported this income on the installment method. The income tax treatment of income from the continuous budget accounts is not at issue here.

5) Both rotating charge accounts and continuous budget accounts established a credit limit for each customer. When an account had an outstanding balance, the customer was required to make a monthly payment of at least a specified amount. Payments were not applied to liquidate any particular sale but reduced the balance, which consisted of the unpaid portion of all purchases. A customer was not required to execute a separate contract for each purchase.

In filing its returns plaintiff reported on the installment method its income from categories 2, 3, and 5 but not its income from category 4. Only the tax treatment of plaintiff's rotating charge accounts is in controversy. Plaintiff corrected its erroneous reporting of sales on rotating charge accounts by filing timely claims for refund for all the years in issue. The claims were either denied or not acted upon within the prescribed time and plaintiff instituted this action.

The parties agree that all of plaintiff's income from sales on its rotating charge accounts is taxable. The question is only the *years* in which plaintiff should have included that income in its taxable income. Plaintiff contends that it should have reported that income on the installment method and, therefore, by reporting it on the accrual method it prepaid its taxes on that income in years before the taxes were due. Plaintiff seeks interest on the difference between the amounts it paid and the lesser amounts it claims it should have paid.

The issues involved in this case are the following:

1) Was plaintiff's 1952 election of the installment method required to be all inclusive so that plaintiff's reporting of its rotating charge account income on the accrual method during 1952 through 1966 was erroneous?

2) Did plaintiff's recomputation of its returns constitute a retroactive change of accounting method for which the Commissioner's consent is required?

In its income tax return for 1952, plaintiff elected to report its income from installment sales on the installment method in accordance with § 44(a).[3] Section 453(a)(1) of the 1954 Code (hereafter § 453(a)(1)) is substantially identical.[4]

Plaintiff contends that its election applied to all of its sales on the installment method and to all years here at issue.

At this point it is well that we examine the purposes of the installment reporting sections above mentioned. In *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 503, 68 S.Ct. 695, 700 (1948), the Court stated:

> The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price. *Another reason was the difficult and time-consuming effort of appraising the uncertain market value of installment obligations.* * * * [Footnote omitted. Emphasis supplied.]

Similarly, in *Baltimore Baseball Club, Inc. v. United States,* 481 F.2d 1283, 1285, 202 Ct.Cl. 481, 485 (1973), we stated the purposes to be as follows:

> * * * the basic purposes of which are to defer payment of tax on gains until the proceeds of sale with which to pay the tax have been received and also to avoid *what may be the difficult requirements of valuing the obligations of the purchaser in a closed transaction.* * * * [Emphasis supplied.]

We observe that there are two purposes for the statute: first, to defer the payment of taxes on gains until the proceeds of the sale have been received, and second, to avoid the difficult and time-consuming effort of appraising the uncertain market value of installment obligations. The first reason is, of course, obvious but we also consider the second reason to be very mate-

---

**3.** *Sec. 44. Installment Basis.*

"(a) *Dealers in Personal Property.*—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments

actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price."

**4.** Section 44(a) of the 1939 Code was in effect for plaintiff's taxable years 1952 through 1954. Section 453(a) of the 1954 Code was in effect for the remaining taxable years in issue, 1955 through 1966.

rial in the present-day world of vast department store operations, as in the present case. In the discussion to follow, we must keep in mind that the statute not only defers payment of taxes until the money is received but it also avoids a very practical consideration where thousands or millions of accounts are involved.

The statute and regulations in effect for 1952 govern the interpretation and effect of plaintiff's election. It is plaintiff's position that once a dealer elected the installment method, it could not discontinue using it or change to another method in a subsequent year unless it requested and received the consent of the Commissioner.

The term "installment plan" as applied to dealers in personal property was not defined in § 44 of the 1939 Code, in the regulations issued thereunder, or in the legislative history of § 44 or its predecessors.[5] Nor was it defined in the 1954 Code or the regulations in effect prior to 1963. During a period commencing prior to the first year at issue and terminating on October 15, 1963, it was the policy of the Internal Revenue Service that only sales under the "traditional installment plan" qualified as sales on the installment plan eligible for installment reporting by dealers.

In 1960 the United States District Court for the District of Massachusetts rejected the Service's position and held that sales under the revolving credit plan were installment sales which qualified for reporting under both § 44(a) and § 453(a). *Consolidated Dry Goods Co. v. United States, supra* note 1. The court there at 881 held as follows:

> The evidence offered by plaintiff clearly establishes that in the practice and usage of the retail trade the term "installment plan" is broad enough to include plaintiff's plan. In trade usage any plan involving an arrangement for the

sale of merchandise with payment to be made in two or more periodic payments is an installment plan. Numerous text books were cited to show that this is the accepted trade definition and that revolving credit plans in their various forms are considered in the retail trade to be installment plans. A similar usage prevails in the field of statistics relating to retail trade. The Federal Reserve Board follows this usage in compiling its statistics of business activity. Thus the Federal Reserve Bulletin for April 1953 explains, on page 341, that "installment credit includes all consumer credit held by financial institutions and retail dealers which is scheduled to be repaid in two or more installments. Revolving credit, budget, or coupon accounts are treated as installment credit rather than as charge accounts because they involve scheduled repayment on a periodic basis."

On October 15, 1963, the regulations under § 453 were amended to accept the holding of the *Consolidated Dry Goods* case and to define the two types of installment sales eligible for installment reporting: sales under the traditional installment plan and sales under a revolving credit plan.

A traditional installment plan is defined in the regulations, as amended in 1963, in terms of two identifying characteristics: a separate contract for each sale and the dealer's retention of a security interest.[6] Plaintiff's sales on its regular deferred payment accounts were sales on the traditional installment plan. A revolving credit plan is one under which the customer agrees to make monthly payments of a portion of the outstanding balance of his account. Payments are generally not applied to liquidate any particular sale but simply reduce the balance due on the account. The parties agree that plaintiff's sales on its rotating charge accounts, its continuous budget

---

5. *Consolidated Dry Goods Co. v. United States, supra* note 1, at 880–81.

6. Treas.Reg. § 1.453–1(a)(1) (1963):
"A traditional installment plan usually has the following characteristics:

"(i) The execution of a separate installment contract for each sale of personal property, and
"(ii) The retention by the dealer of some type of security interest in such property."

accounts,[7] and its general merchandise credit coupon accounts [8] were sales on the revolving credit plan.

Under both § 44(a) and § 453(a), plaintiff contends that its 1952 election required it to report all installment sales income in accordance with the installment method. However, plaintiff admits that it improperly reported some of that income on the accrual method, its income from rotating charge accounts. For years under the 1939 Code it was held in *Consolidated Dry Goods Co. v. United States, supra* note 1, that sales on the revolving credit plan were simply a type of installment sale. The taxpayer in that case was not required to make a separate election to report those sales on the installment method because its election of that method was held to include revolving credit sales. In 1963 the regulations were amended to provide that for years governed by the 1954 Code a dealer who makes sales under both the traditional installment plan and the revolving credit plan may elect to report on the installment method: (1) all of his sales under both plans; (2) only his sales under the traditional installment plan; or (3) only his sales under the revolving credit plan. Treas.Reg. § 1.453–1(a)(1) (1963).

At this point it is well that we incorporate from plaintiff's brief the position as well as the alternative it takes:

In 1963, regulations under section 453(a) of the 1954 Code were amended to reflect the Commissioner's acceptance of the *Consolidated Dry Goods* holding that revolving credit sales are installment sales. The amended regulations are applicable only to 1954 Code years, not for 1952, the year of Gimbels' election, yet defendant's brief persists in attempting to apply the 1963 regulations to interpret Gimbel's election. [Footnotes omitted.]

The length and frequency of defendant's invocation of those regulations render it incumbent on us to point out to the Court that the 1963 regulations continued to require a dealer to make an all-inclusive election for his traditional installment sales, his revolving credit sales, or both. Thus, even if those regulations were applicable or relevant to interpret the effect of Gimbel's election, which they are not, that election clearly covered all of Gimbels' installment sales.

The 1963 regulations incorporate in the tax law two industry terms first mentioned in the *Consolidated Dry Goods* case: "traditional installment sales" and "revolving credit sales." Under the 1963 regulations, a dealer who elects the installment method *in or after 1954* is permitted to elect that method for *all* of his traditional installment sales, or for *all* of his revolving credit sales, or for *all* of both types of sales. The 1963 regulations do not allow an election for less than all of either type of sale. [Footnote omitted. Emphasis in original.]

Yet, notwithstanding the clear language of Gimbels' election and of the 1963 regulations, defendant contends that Gimbels' election should be interpreted as an election of the installment method for all 5 of its traditional installment plans, and for 7 of its 12 revolving credit plans, but not for its 5 remaining (and, concededly, substantially identical) revolving credit plans. Defendant further asserts that this selective "election" which defendant created out of whole cloth is permissible under the 1963 regulations, and binding on Gimbels. [Footnote omitted.]

Defendant's unfounded arguments are most easily refuted not only by the explicit language of the 1963 regulations themselves * * * but also by the reasoning underlying those regulations. After all, if a dealer were permitted to elect the installment method for whichever of his installment plans he desires, as defendant here claims, why do the 1963 regulations not provide that a dealer may elect the installment method for "any one or more" of his installment

---

7. Treas.Reg. § 1.453–2(d)(1) (1963).

8. *W. T. Grant Co. v. Comm'r,* 483 F.2d 1115 (2d Cir. 1973), *cert. denied,* 416 U.S. 937 (1974).

plans, instead of dragging in a reference to the two broad classes of installment sales.[9]

\* \* \* \* \* \*

Accordingly, even if the 1963 regulations did govern the scope of Gimbels' 1952 election, which they do not, that election was, as a matter of law, all-inclusive for both Gimbels' traditional installment sales and its revolving credit sales. It, therefore, covered the rotating charge accounts here at issue.

With relation to plaintiff's position above expressed, we observe that in *Pacific National Co. v. Welch,* 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282 (1938), the taxpayer reported income from sales of property according to the deferred payment method, although it could have used the installment method. The Court held that the taxpayer was not entitled to have the income computed according to the installment method where it is not shown that the deferred payment method correctly applied would not clearly reflect its income. The Court stated:

\* \* \* There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method. By reporting income from the sales in question according to the deferred payment method, petitioner made an election that is binding upon it and the commissioner. [Footnote omitted. At 194–95, 58 S.Ct. at 858–59.]

Plaintiff argues that a taxpayer who elects one of several permissible accounting methods is bound by his election even if he applies it in an erroneous fashion, provided that the method elected, if properly applied, would clearly reflect income.

Defendant argues that under the holding of *Pacific National,* plaintiff is bound by its election and its consistent reporting of its rotating charge accounts on the accrual method. Defendant's argument is that since plaintiff's 1952 election was not required to be all inclusive, its actual reporting of its rotating charge accounts on the accrual method for all of the years in issue must be deemed a legally binding election of such method. Plaintiff finds support in the same case by arguing that it made an election in 1952, it made a mistake in not reporting its rotating charge account sales on the installment method, and now it wants to correct its mistake, not change its election.

Defendant's argument focuses on whether the 1952 election was required to be all inclusive. An examination of the provisions of the 1939 Code and of the 1954 Code prior

9. Plaintiff further points out the following from defendant's own publication:

"Indeed, the Internal Revenue Service's published 'official interpretation' of the 1963 regulations even more explicitly demands an all-inclusive election. Since 1964, each edition of the *Tax Guide for Small Business* has stated that a dealer who makes both traditional installment sales and revolving credit plan sales may elect the installment method for his revolving credit plan sales, or for his traditional installment sales, or for both, but not for less than all of either category:

" 'If you are a dealer regularly engaged in the sale of personal property on the installment plan, or revolving credit plan, you may report *all of your income from such sales* either on the installment method or on the accrual method \* \* \*.

\* \* \* \* \* \*

" '[Y]ou must indicate in your return that the installment method is being adopted and specify the type or types of sales (installment plan or revolving credit plan or both) included within such election.' \*

"Similar language appears in both editions of another Internal Revenue Service publication: CREDIT SALES BY DEALERS IN PERSONAL PROPERTY (IRS Publication No. 512, 1972 edition at page 2; 1975 edition at page 1)."

" \* *TAX GUIDE FOR SMALL BUSINESS,* IRS Publication No. 334, 1965 edition at page 16 (1964); 1966 edition at page 12 (1965); 1967 edition at page 12 (1966); 1968 edition at page 18 (1967); 1969 edition at page 14 (1968); 1970 edition at page 14 (1969); 1971 edition at pages 12–13 (1970); 1972 edition at pages 15–16 (1971); 1973 edition at page 18 (1972); 1974 edition at page 19 (1973); 1975 edition at page 19 (1974). (Emphasis added.) Beginning with the 1970 edition, the first sentence of the above quotation was changed to read ' \* \* \* you may report your income from such sales. \* \* \* ' The quoted language also has other immaterial variations in some editions."

to the 1963 regulations does not resolve the problem. Nor is it resolved by an examination of the 1963 regulations which assume a factual situation in which a merchant has one traditional installment plan and one revolving credit plan. Defendant states that plaintiff did not maintain a revolving credit plan but, rather, utilized three revolving credit plans. Reporting of one plan on the installment method did not foreclose reporting another plan on the accrual method. Defendant also states that a taxpayer is permitted to use a hybrid accounting method provided that the combination of accounting methods clearly reflects income and is consistently used. And defendant argues that an erroneous accounting method, consistently applied, cannot be changed.

Plaintiff's argument to rebut defendant's selective election proposition is that if the installment method could be selected for some installment plans and not others, then an electing dealer could easily have avoided the double tax imposed by § 44(c) of the 1939 Code. Although there has been much written on minimizing the impact of the double tax, no one has suggested selective election. Section 44(c) provided as follows:

(c) *Change from accrual to installment basis.*—If a taxpayer entitled to the benefits of subsection (a) elects for any taxable year to report his net income on the installment basis, then in computing his income for the year of change or any subsequent year, amounts actually received during any such year on account of sales or other dispositions of property made in any prior year shall not be excluded.

There would be a double tax, once when the total income was reported under the accrual method and again after the change in methods when the income from previous sales was reported under the installment method. Plaintiff argues that if defendant's theory of selective election is correct, a dealer would merely have had to change the

names and a few details of any one or more of his credit plans sufficiently to make it a different plan and then elect the installment method only for the new plan. Under defendant's rationale the smallest changes would suffice for defendant argues that plaintiff's election covered its continuous budget accounts but not its rotating charge accounts, even though the operations of those plans were, as defendant states in its brief, "virtually indistinguishable."

However, plaintiff continues, in over 50 years of double tax on electing dealers, no one has proposed such selective election. Although a sizeable body of literature on the double tax has developed and although many of the articles and treatises discuss possible ways to minimize the impact of the double tax,[10] no one has suggested that a dealer who wants to elect the installment method without incurring the double tax simply do so at a time when he initiates one or more new installment plans, including sufficiently modified old plans, and restrict his election of the installment method to the new or modified plans only.

Commentators have agreed that a dealer's election of the installment method applies as a matter of law to all of his installment sales. We refer to the following authors:

* * * [A] dealer who elects to report income on the installment basis must do so for all installment sales during the year, while in the case of a "casual" sale of personal property the taxpayer has a separate option with respect to each transaction. * * * [B. Bittker, Federal Income, Estate and Gift Taxation 696 (1st ed. 1955); 655 (2d ed. 1958); 815 (3rd ed. 1964); B. Bittker and L. Stone 846 (4th ed. 1972).]

* * * Sellers of real estate and casual sellers of personal property may elect separately for each sale, but a dealer's election is binding from year to year in respect of all installment sales * * *.

---

10. One way is to sell to a bank the installment receivables which resulted from sales reported on the accrual method and then elect the installment method. See *City Stores Co. v.*

*Smith,* 154 F.Supp. 348 (E.D.Pa.1957), and the Commissioner's following of that decision in Rev.Rul. 59–343, 1959–2 Cum.Bull. 136.

[Moser, *Installment and Deferred Payment Sales,* N.Y.U. 9th Inst. on Fed. Tax. 997, 998 (1951).]

Installment dealers must be consistent each year and must report all or no sales under the installment method, whereas, casual sellers of personalty or sellers of realty have an option as to each sale and may report income from one sale under the installment method and income on the next sale under their usual method of accounting. [Anderson, *The Taxation of Installment Sales Including Section 44(d) Problems,* U.So.Cal. 1953 Tax Inst. 341, 346 (1953).]

■ We hold that the 1952 election was required to be all inclusive. We have carefully read § 44(a) and § 453(a). From the very language used the election was intended to be all inclusive. The statutes state that a dealer "may return as income therefrom [from the sale or other disposition of personal property on the installment plan] in any taxable year" a proportion of the installment payments received in that year. The election is for the installment method, not for which items will be accounted for under the installment method once that method is elected. This is in contrast to the treatment of sales of real property and casual sales of personal property where an installment method election applies only to a particular sale and separate elections are available for each sale.

In *Mayer & Co.,* 9 B.T.A. 815, 822 (1927), the Board stated:

\* \* \* When [the taxpayer dealer] changed its method of reporting from the accrual method to the installment method, it was called upon to report all of its income from installment sales under that method. It must treat all such items of income consistently. It cannot return under both methods. To follow both methods would result in distortion of income. \* \* \* .

In *Franc Furniture Co.,* 1 B.T.A. 420 (1925), the taxpayer deducted only part of its expenses when reporting income on the installment basis. It was entitled to deduct all of its expenses when incurred, regardless of how it reported income. The taxpayer submitted amended returns but the Commissioner regarded them as changing its basis of reporting income and they were not acceptable. The Board held that the amended returns did not change the method of reporting income but merely claimed additional expense deductions.

In *Ivan D. Pomeroy,* 54 T.C. 1716 (1970), the petitioner, who had sold his residence, stated in his income tax return for the year of sale: "Electing to treat as an installment sale \* \* \*." 54 T.C. at 1720. The Commissioner determined that the taxpayer had erroneously applied the installment method in computing his gain, and the taxpayer then sought to report the gain on the "open contract" method. The court held, however, that despite his erroneous computation, the petitioner had elected the installment method:

\* \* \* Here, petitioner did make a permissible election on his return and only his computation of gain is disputed by the respondent. Having thus made that election, petitioner may not now change his position. [54 T.C. at 1724.]

■ The well-accepted principle that an election of a permissible elective method is valid despite the taxpayer's incorrect application of that method is not unique to the installment sale area. Just as plaintiff's election of the installment method required it to report all of its installment sales on that method, so an election to take a credit rather than a deduction for foreign income taxes paid requires a taxpayer to claim a credit for all such income taxes paid in the year of election. He cannot claim a credit for some and a deduction for others. Int. Rev.Code of 1954, § 275(a)(4).

In an analogous area the Internal Revenue Service ruled that a taxpayer's deduction of *any* research expenditures with respect to a project constitutes a binding election to deduct *all* such expenditures for that project for the year of election and for all subsequent years. Accordingly, the Service ruled that a taxpayer who deducted some such expenses but failed to deduct others "should file a timely claim (Form 843) or

amended return and claim the additional research or experimental expenses for the year or years in which they were omitted." Rev.Rul. 58–74, 1958–1 Cum.Bull. 148.

■ The same conclusion holds true for a dealer who reports some installment sales on the installment method: he has thereby elected to report *all* of his installment sales on the installment method, and his failure to report some such sales in conformity with his election must be corrected in a claim for refund or an amended return. This is what plaintiff did.

■ The fact that the party making an election misunderstands the tax consequences of the elected method and hence misapplies it also does not invalidate the election. In *Rosenfield v. United States,* 156 F.Supp. 780 (E.D.Pa.1957), *aff'd,* 254 F.2d 940 (3d Cir. 1958), *cert. denied,* 358 U.S. 833, 79 S.Ct. 55, 3 L.Ed.2d 71, an executor stated in an estate tax return that he elected to have the assets valued on the optional valuation date. In preparing the return the attorney for the estate, upon whom the executor relied in signing the return,

> * * * mistakenly believed that by electing the optional valuation date the estate would be permitted to pick and choose the advantageous date for each individual asset. Accordingly, under the column headed "Value under option" on the return he entered the valuation at the date of death for each asset which had increased in value within a year after death, and the year after death valuation for each asset whose value had decreased or remained unchanged during that period. * * * [156 F.Supp. at 782.]

The court rejected the argument of the administrator [the deceased executor's successor] that an attempted application of the election to only a portion of the assets of the estate was not a valid election of the optional valuation date. It held that the statement in the return clearly indicated an election of the optional valuation date; hence, the improper failure to value all assets as of that date was not an election of such treatment (which was impermissible)

but, rather, an erroneous manner of applying the optional valuation method elected. The administrator was thus required to value *all* of the estate's assets on the optional valuation date and could not change the election.

■ Where a taxpayer makes an election but applies the elected method in an erroneous manner, the courts have consistently allowed the taxpayer to correct the error in an amended return or in a refund claim. In *Ray W. Torrey Co. v. Commissioner,* 84 F.2d 659 (6th Cir. 1936), *rev'g on procedural issue,* 1934 P–H B.T.A. Memo.Dec. ¶ 34,283, the taxpayer had filed a return "on the installment basis although not strictly in accordance with the respondent's regulations" (1934 P–H B.T.A. Memo.Dec. ¶ 34,-283). A year later it filed an amended return showing substantially less income, correctly computed under the installment method. The Board of Tax Appeals rejected the Commissioner's argument (the same one he makes here) that the taxpayer was attempting to change to the installment method in its amended return. The Board held, and the Sixth Circuit agreed, that, while the original return was not technically correct under the installment method, the taxpayer nevertheless intended to and did file its original return on that method. Accordingly, on remand the Board of Tax Appeals found that the taxpayer had no taxable income for the year in question and was entitled to a refund (*Ray W. Torrey Co.,* 1936 P–H B.T.A. Memo.Dec. ¶ 36,396).

■ Applying the above rules to the instant case, it is clear that plaintiff was not permitted to report on the accrual method its income from sales on rotating charge accounts, for a dealer who elected the installment method was required to report all income from its installment sales on the installment method. Accordingly, plaintiff could not have elected and did not elect to report income from its rotating charge accounts on the accrual method; but, rather, such reporting was an error. By filing its timely claims for refund properly reporting that income on the installment method, plaintiff corrected its error.

Plaintiff had to report all of its installment sales on the installment method. The sales in the rotating charge accounts were installments sales. There is no division of revolving charge accounts into separate accounts. All revolving charge accounts are to be treated the same. Since the continuous budget accounts were reported on the installment method, so, too, must the rotating charge accounts. Plaintiff's method was not a hybrid nor was it an erroneous accounting method. There was one method of accounting, the installment method. An error was made by not applying the method to the rotating charge accounts. There was no change in accounting methods but, rather, the correction of an error.

Plaintiff alternatively argues that even if it had purported to elect to report its rotating charge accounts on the accrual method, such reporting was impermissible and, therefore, did not bar a later election to report those accounts on the installment method. In view of our disposition of the case, it is not necessary to take up this argument.

Defendant's alternative argument, if plaintiff's 1952 election was required to be all inclusive, is that plaintiff is still not entitled to recompute retroactively the income from sales under its rotating charge plan on the installment method after it had consistently reported the income from such sales on the accrual method. Plaintiff answers this with Rev.Rul. 75–56, 1975–1 Cum.Bull. 98, which contrasted two situations in which taxpayers attempted to correct their improper capitalization of certain deductible expenses. In one situation the erroneous treatment occurred for ten years and the statute of limitations had expired for seven of those years. The taxpayer's attempt to amend its returns for only the last three years was held to be a change of accounting method from the method used in the closed years.

X [a domestic corporation], on the other hand, by permitting the period for amending its first return to expire, has adopted a method of accounting within the meaning of section 1.446–1(a) of the regulations, to capitalize such expenses.

Accordingly, the taxpayer in the instant case, having adopted a method of accounting to capitalize the items in question, is precluded from changing that method for the years 1971, 1972, and 1973. * * * [Rev.Rul. 75–56, 1975–1 Cum.Bull. 98.]

In the other situation dealt with in Rev.Rul. 70–539, 1970–2 Cum.Bull. 70, the taxpayer amended its returns to correct the erroneous accounting method in all three years in which the method was used, including the initial years of such use. The Internal Revenue Service stated in Rev.Rul. 75–56:

* * * The holding [in Rev.Rul. 70–539] was based on a decision that such taxpayer had never made a valid binding election to capitalize the expenses involved. By amending its first return, the taxpayer in Rev.Rul. 70–539 was not changing a method of accounting used in previous years, since it had no previous existence. In effect, by timely amending of its first return, such taxpayer was adopting a method of accounting within the meaning of section 1.446–1(a) of the regulations.

In the instant case plaintiff is amending its first return in which it made its election. If under Rev.Rul. 70–539 a taxpayer could amend a return where an election was not made in order to make the election, it is our view that plaintiff here can amend a return to properly report according to the election it has already made.

CONCLUSION OF LAW

Upon the foregoing opinion, which contains the essential findings of fact as stipulated by the parties, the court concludes as a matter of law that judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 131(c).