JOHN P. FODOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CARMEN M. FODOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fodor v. Commissioner
Docket Nos. 19153-87, [1] 20320-87 United States Tax Court
T.C. Memo 1991-295; 1991 Tax Ct. Memo LEXIS 341; 62 T.C.M. (CCH) 47; T.C.M. (RIA) 91295; July 3, 1991, Filed *341 Decision will be entered under Rule 155 in docket No. 19153-87. Decision will be entered for the petitioner in docket No. 20320-87. Michael L. Eckstein and Susan J. Burkenstock, for the petitioners. Linda K. West, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioners' Federal income taxes as follows: *342 John P. Fodor
Docket No. 19153-87
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1) [2]
Sec. 6653(b)(2)
Sec. 6654(a)
Sec. 6661
1983
$ 202,997
$ 101,499
$ 37,364
$ 12,422
$ 50,749 1984
103,995
51,998
11,380
6,539
15,999
Carmen M. Fodor
Docket No. 20320-87
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6654(a)
Sec. 6661
1983
$ 101,823
$ 5,091
50 percent of
$ 6,197
$ 25,456
the interest due
on $ 101,823
1984
50,512
2,526
50 percent of
3,088
12,628
the interest due
on $ 50,512
On brief, respondent conceded that petitioner Carmen M. Fodor did not receive unreported income from Nordac Manufacturing and that she is not liable for the additions to tax for underpayment of estimated taxes, substantial understatement of income tax liability, and negligence, for the years in issue. As a result, there are no deficiencies or additions to tax with respect to Carmen M. Fodor. [3]
*343 The remaining issues for decision in each of the years in issue are: (1) Whether John P. Fodor (hereinafter petitioner) failed to report taxable income; (2) whether petitioner is liable for additions to tax under section 6653(b)(1) and (2) for underpayment of taxes due to fraud or, (3) as an alternative to fraud, whether petitioner is liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations; (4) whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to timely file Federal income tax returns; (5) whether petitioner is liable for additions to tax under section 6654(a) for failure to pay estimated income taxes; and (6) whether petitioner is liable for additions to tax under section 6661 for substantial understatement of income tax liability. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. During the years in issue and at the time of filing the petitions, petitioner resided in San Salvador, El Salvador, and his wife, Carmen M. Fodor, resided in LaPlace, Louisiana. Petitioner *344 was a citizen of the United States, and Carmen M. Fodor was a citizen of El Salvador. Petitioner did not file Federal income tax returns for either taxable years 1983 or 1984. However, he did file income tax returns in El Salvador for these years. Carmen M. Fodor filed Federal income tax returns for taxable years 1983 and 1984, and reported income in the form of wages from River Parishes Medical Center in 1983 and 1984 and interest income in 1984. Petitioner was born in Hungary and immigrated to the United States in 1956. From 1956 to 1963, he resided in the United States, and thereafter, he resided in El Salvador. During the years in issue, petitioner was president and owned a minority interest in Almacen Signal, S.A. (Almacen), a legal entity under the laws of El Salvador. At the time of trial, Carmen M. Fodor also owned a minority interest in Almacen, but she was not involved in the operation of the business. Almacen was a licensed import company and was in the business of selling a wide variety of goods to consumers in El Salvador. Petitioner occasionally travelled to the United States to purchase goods for Almacen. In 1981 or 1982, while at a trade show in Las Vegas, *345 petitioner met John P. Straiton. Mr. Straiton was president of Nordac Manufacturing Corporation (Nordac), a Virginia corporation. Nordac manufactured and distributed military equipment, primarily "soft" military equipment. "Soft" military equipment refers to boots, field packs, ponchos, sleeping bags, etc. Prior to meeting petitioner, Nordac had not conducted any business in El Salvador. Almacen purchased soft military goods from Nordac for resale to its local El Salvador consumers. As the relationship between Mr. Straiton and petitioner developed, Mr. Straiton realized that petitioner could help Nordac establish contacts with the El Salvador government and ultimately help Nordac obtain contracts for the sale of military goods to the El Salvador government. Carmen M. Fodor's uncle is Salvadoran Army Colonel Jorge Rivera. Colonel Rivera was Chief of the Finance Department of the El Salvadoran Ministry of Defense. Petitioner helped Mr. Straiton and Nordac establish a business presence in El Salvador. Petitioner introduced Mr. Straiton to members of the local business community, advised Mr. Straiton on travel and accommodations in El Salvador, and made arrangements for Mr. *346 Straiton to join the local country club. Mr. Straiton and petitioner had an understanding that, in exchange for petitioner's assistance, petitioner would receive a portion of the profits on the government contracts that were awarded to Nordac by El Salvador. Thereafter, Nordac entered into contracts with the El Salvadoran government. Pursuant to the understanding between petitioner and Mr. Straiton, Nordac made the following payments during 1983 and 1984. Check No.
Date
Payee
Amount
56802
1/7/83
John Fodor
$ 45,814.18
57548
3/24/83
John Fodor
37,284.00
57549
3/24/83
John Fodor
37,284.00
57550
3/24/83
John Fodor
37,284.00
57551
3/24/83
John Fodor
37,284.00
57552
3/24/83
John Fodor
37,284.00
57580
3/30/83
John Fodor
5,385.49
57944
5/19/83
John Fodor
23,081.40
58916
9/22/83
Almacen Signal, S.A
43,716.00
59936
12/23/83
Cash (given to petitioner)
30,000.00
Cash
12/23/83
-- (given to petitioner)
9,900.00
60434
2/16/84
Carmen Fodor
5,000.00
60107
2/29/84
Cash (given to petitioner)
50,000.00
235
4/3/84
Almacen Signal, S.A
26,000.00
In 1983, petitioner purchased certificates of deposit with a total face value of $ 161,786.09 from the Riverlands National Bank *347 of LaPlace, Louisiana. These certificates of deposit were purchased in the names of Cindy Fodor or John Fodor. Cindy Fodor is petitioners' daughter. She was 17 years old in 1983. In 1984, petitioner purchased certificates of deposit with a total face value of $ 188,711.84 from the Riverlands National Bank of LaPlace, Louisiana. These certificates of deposit were also purchased in the names of Cindy Fodor or John Fodor. [4] Petitioner did not pay any Federal income taxes on the interest income generated from these certificates of deposit. In 1983, petitioner and eight of his relatives, including Colonel *348 Rivera and his family, traveled to Europe. Nordac paid for the airline tickets and provided petitioner with $ 39,000 in cash which he took with him on the trip to Europe. Petitioner failed to report, as required by law, to United States customs officials that he was taking in excess of $ 10,000 out of the United States. In May 1986, the grand jury for the Eastern District of Virginia returned a 60-page indictment against petitioner, Mr. Straiton, Mr. Straiton's ex-wife, and Nordac. [5] Count one of the indictment charged that petitioner violated Title 18 U.S.C. sec. 371 (1988). [6] Specifically, Count one of the indictment alleged that petitioner conspired to defraud the United States by impeding the Foreign Military Sales program, [7] undermining enforcement of the Arms Export Control Act, [8] and impeding the lawful functions of the Internal Revenue Service by impairing collection of petitioner's taxes. Count one of the indictment also alleged that petitioner conspired to commit various other acts against the United States. Count one of the indictment specifically alleged that: (1) Petitioner acted as Nordac's agent in El Salvador; (2) petitioner and others known and unknown to *349 the grand jury received compensation for their services; (3) petitioner failed to report this compensation to the Internal Revenue Service; and (4) petitioner deliberately failed to report this compensation in order to avoid United States income taxes. Count one of the indictment also states that petitioner received approximately $ 416,315 and $ 81,000 in commissions from Nordac in the respective years 1983 and 1984. *350 On July 30, 1986, petitioner pled guilty to count one of the May 1986 indictment. At the hearing during which petitioner submitted his guilty plea, the United States Attorney stated that the evidence would demonstrate that petitioner received $ 635,363 [9] in commissions from Mr. Straiton, his wife, and Nordac during the years 1983 and 1984. Petitioner's attorney did not contest this amount, but explained that only approximately $ 180,000 of that amount was paid pursuant to the contract which was the principal subject of the indictment and that petitioner received at least $ 300,000 in commissions on other contracts that had been entered into between Nordac and the El Salvadoran government. Petitioner's attorney also denied that petitioner had attempted to evade United States income taxes. Petitioner's attorney stated that by pleading guilty, petitioner was only admitting that he conspired to "cover up" the fact that commissions in excess of $ 50,000 were paid in order to conceal violations of the Foreign Military Sales program. The District Court accepted the plea. Petitioner's attorney essentially made the same representation in his sentencing memorandum dated September 18, *351 1986. Petitioner reported $ 11,400 of income on his 1983 El Salvador income tax return, and he reported $ 11,500 on his 1984 income tax return. OPINION The first issue for decision is whether petitioner received unreported sales commissions from Nordac during the years in issue. Respondent determined that petitioner failed to report sales commissions received from Nordac in the amounts of $ 416,315 and $ 219,048 for the taxable years 1983 and 1984, respectively. Petitioner's primary argument is that he received the commissions on behalf of Almacen and that he is not taxable for these amounts. If petitioner is correct, then Almacen, not petitioner, would be the recipient of the income. Goodwin v. Commissioner, 73 T.C. 215, 230 (1979), overruled on other grounds Wright v. Commissioner, 84 T.C. 636, 643 (1985); Diamond v. Commissioner, 56 T.C. 530, 541 (1971), *352 affd. 492 F.2d 286 (7th Cir. 1974). Petitioner also claims that Almacen properly reported the money it received from Nordac on its El Salvador corporate income tax returns. Respondent's determination is presumed correct and petitioner bears the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a).[10]
*353 The primary evidence offered by petitioner to substantiate his claim that he received the sales commissions as an agent of Almacen was his own testimony. We are not bound to accept petitioner's own self-serving testimony. See Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court; Davis v. Commissioner, 88 T.C. 122, 140-141 (1987), affd. 866 F.2d 852 (6th Cir. 1989); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Petitioner did not produce the books and records of Almacen or the testimony of any of Almacen's officers or employees, to substantiate his claim that he received the commissions in his capacity as Almacen's agent. Petitioner testified that he was unable to present Almacen's business records because the United States Attorney who prosecuted him had the records and would not return them to petitioner. However, petitioner failed to offer any evidence to corroborate this explanation. Petitioner introduced into evidence a document which purports to be a summary of funds spent in connection *354 with the construction of a warehouse by Almacen in El Salvador. Petitioner offered this document to prove that most of the payments from Nordac were used to pay for the construction of this warehouse. Petitioner's testimony regarding this document was vague and unpersuasive. Petitioner did not know when the document had been prepared, nor could he explain the figures reflected in the document. The document reflects that funds received from Nordac were "loans." However, Almacen never borrowed money from Nordac, and, it is clear that the commissions paid by Nordac were not loans. Petitioner testified that the amounts reflected in the document as loans were also reflected in Almacen's El Salvador corporate income tax returns as costs of goods sold. Accounting for the Nordac commissions as costs of goods sold makes no sense and petitioner was unable to provide any explanation. Mr. Straiton testified that Nordac compensated petitioner for his assistance in procuring contracts. Mr. Straiton also testified that petitioner directed him to issue checks payable to himself, to cash, to his wife, and to his corporation, and that Mr Straiton complied with this request because "it was his *355 (petitioner's) money and it should be given to him in what ever manner that he wanted." The checks and other documents in evidence indicate that petitioner received large sums of money. This evidence indicates that petitioner received $ 410,417.07 from checks issued by Nordac. Petitioner also received a cash disbursement from Nordac in the amount of $ 9,900.00. Nordac also paid for airfare to Europe for petitioner and members of his family. Nordac, at petitioner's request, also issued a check to petitioner's wife in the amount of $ 5,000.00. Petitioner argues that the total amount of the specific payments by Nordac which respondent has proven are less than the total amount of commissions which respondent has included in petitioner's income. While it is true that the record in this case does not contain evidence of specific individual payments from Nordac which equal the income determined by respondent, [11] respondent's figures appear to be based in part on figures contained in petitioner's criminal indictment, and figures that were referred to during petitioner's guilty plea hearing and in the sentencing memorandum submitted to the District Court by petitioner's attorney. *356 During the aforementioned criminal proceedings, petitioner's attorney specifically admitted that petitioner received at least $ 300,000.00 in commissions from Nordac in addition to commissions of approximately $ 160,000.00 to $ 180,000.00 related to the contract that was the primary subject of the indictment. [12] At the trial in this case, petitioner did not offer any testimony that the total commissions paid by Nordac during the years in issue were less than the amount determined by respondent. During the years in issue, petitioner reported less than $ 23,000.00 of income on his El Salvador income tax returns while purchasing certificates of deposit with a total face value of $ 350,497.93. [13]
*357 After reviewing the entire record, we find that petitioner has failed to satisfy his burden of proving that he did not receive income in the amounts determined by respondent. Accordingly, we hold for respondent on this issue. The second issue for decision is whether petitioner is liable for the additions to tax under section 6653(b)(1) and (2) for underpayment of taxes attributable to fraud. Respondent bears the burden of proving by clear and convincing evidence that: (1) An underpayment exists for each of the years in issue, and (2) that some portion of each underpayment is due to fraud. Sec. 7454(a); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Rule 142(b). To meet his burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire *358 record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never imputed or presumed. It must be established by independent evidence of a fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from proven facts because direct proof of a taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may be used to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). The fact that respondent has prevailed on the issue of the existence of a deficiency by virtue of a taxpayer's failure to carry his burden of proof, cannot be relied upon to sustain respondent's burden of proving fraud. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). Respondent produced checks drawn *359 on Nordac's account and made out to either petitioner, cash, Carmen M. Fodor, or Almacen. Petitioner received all of the proceeds from these checks, with the exception of the one check written to Carmen M. Fodor. Petitioner testified that he received these proceeds as an agent for Almacen. Respondent has not affirmatively established by clear and convincing evidence that petitioner did not receive these checks as an agent for Almacen. Petitioner testified that he ultimately transferred the Nordac commissions to or for the benefit of Almacen. The money proven to have been paid by Nordac cannot, on the basis of this record, be traced to an ultimate disposition that is clearly incompatible with petitioner's explanation. It is also unclear from the record exactly what services petitioner could have individually provided that would have warranted these substantial commissions. The circumstances surrounding the earning of the Nordac commissions suggest that others in El Salvador who were associated with Almacen and the government of El Salvador may have also provided services to Nordac. This, in fact, seems to be the principal theme adopted by the prosecutor in petitioner's criminal *360 case. While petitioner was unable to prove his alleged relationship and arrangements with Almacen regarding the Nordac commissions, respondent has not clearly and convincingly disproven the agency relationship. Respondent argues on brief that petitioner's guilty plea is an admission by petitioner that he received sales commissions from Nordac on his own behalf. Count one of the indictment to which petitioner pled guilty alleges that petitioner received sales commissions from Nordac. When pleading guilty, petitioner's attorney admitted this but did not admit that petitioner received the commissions in his own individual capacity. In fact, petitioner's attorney specifically denied that he was trying to hide any of the commissions in order to evade individual taxes and claimed that "he was active on behalf of Almacen Signal throughout these transactions." Petitioner's plea of guilty to conspiracy to defraud the United States is not an admission of all the allegations in the indictment. Rather, it is only an admission of the necessary elements of the crime. Alsco-Harvard Fraud Litigation, 523 F. Supp. 790, 801-804 (D.D.C. 1981) (Holding that a plea of guilty *361 to the crime of conspiracy to defraud the United States is, for purposes of subsequent civil litigation, only an admission of the necessary elements to establish the conspiracy and not an admission of all of the specific acts alleged in the indictment.); see United States v. American Packing Corp., 113 F. Supp. 223, 225 (D.N.J. 1953). Respondent argues that petitioner's receipt of sales commissions in his capacity as an individual is a necessary element of the offense to which petitioner pled guilty. Respondent does not explain why this is so. After reading the indictment and the statutory provisions upon which the criminal charges were based, we do not agree that this is correct. The District Court accepted petitioner's guilty plea despite petitioner's denial that he conspired to hide income for tax purposes and despite his representation that he was acting on behalf of Almacen. This indicates that the capacity in which petitioner received money from Nordac was not a necessary element of the offense. After reviewing the entire record, we find that respondent has failed to prove by clear and convincing evidence that an underpayment exists. For essentially *362 the same reason, we cannot find that respondent has proven by clear and convincing evidence that petitioner intended to evade his taxes. The lack of evidence to prove that the Nordac commissions belonged to petitioner individually, leaves us without any evidence to show that petitioner knew that he was individually liable for taxes on the Nordac commissions. The third and fourth issues for decision are whether petitioner is liable for additions to tax under section 6653(a)(1) for negligence or intentional disregard of the rules and regulations and under section 6651(a)(1) for failure to timely file his Federal income tax returns. Respondent first asserted these additions to tax in his amended answer. Normally, petitioner bears the burden of proof on these issues, but because respondent first raised this issue in his amended answer, respondent bears the burden of proof in this case. Reiff v. Commissioner, 77 T.C. 1169, 1173 (1981). Respondent failed to address either of these issues on brief. In his reply brief, respondent states "petitioner's brief erroneously states that the respondent has imposed a negligence penalty" and restates respondent's position *363 that petitioner is liable for the additions to tax for fraud. In light of this statement, and respondent's failure to address these issues, we will consider respondent to have abandoned these issues. Sundstrand Corporation and Subsidiaries v. Commissioner, 96 T.C. 226, 348 (1991); Ideal Basic Industries, Inc. v. Commissioner, 82 T.C. 352, 366 (1984); Burbage v. Commissioner, 82 T.C. 546, 547 (1984), affd. 774 F.2d 644 (4th Cir. 1985); Rockwell International Corp. v. Commissioner, 77 T.C. 780, 837 (1981), affd. 694 F.2d 60 (3rd Cir. 1982). The fifth issue for decision is whether petitioner is liable for additions to tax for failure to pay estimated income taxes. Section 6654(a) provides for an addition to tax for failure by an individual to pay estimated income tax. The additions to tax under section 6654(a) are generally mandatory unless petitioner can place himself in one of the computational exceptions provided for in subsection (d) thereof. Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Petitioner bears the burden of proof on this issue, *364 and he has not established that any of the section 6654(d) exceptions apply. Accordingly, we hold for respondent on this issue. Petitioner argues that he is not liable for the section 6654 additions to tax because of the equity and good conscience exceptions in section 6654(e) that came into effect in 1984. Petitioner has not proven that he fits within the requirements of the statute, and if so, that the imposition of this addition to tax would be against equity and good conscience. The sixth issue for decision is whether petitioner is liable for additions to tax for substantial understatement of income tax liability. Section 6661(a) imposes an addition to tax in an amount equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. [14]Pallottini v. Commissioner, 90 T.C. 498 (1988). The amount of the understatement is equal to the excess of the amount of tax required to be shown on the return for the tax year less the amount of the tax shown on the return. Woods v. Commissioner, 91 T.C. 88, 94 (1988). An understatement is "substantial" if it exceeds the greater of 10 percent of the *365 tax required to be shown on the return for the taxable year, or $ 5,000. Sec. 6661(b)(1). Because petitioner failed to file income tax returns, the amount of tax shown on the returns is considered to be zero. Sec. 1.6661-2(d)(2), Income Tax Regs.Estate of McClanahan v. Commissioner, 95 T.C. 98, 104 (1990). The deficiencies for 1983 and 1984 qualify as "substantial understatements" as defined in section 6661(b) and none of the provisions for reduction of the section 6661 addition to tax contained in section 6661(b)(2)(B) are applicable. Petitioner argues that he thought that he was not required to file Federal income tax returns because he qualified for the $ 80,000 exclusion from gross income under section 911. *366 Therefore, petitioner argues that he acted in good faith in failing to file his Federal income tax return, and that the resulting understatement was due to reasonable cause. However, the amounts of income attributable to petitioner are far in excess of the section 911 exclusion. Section 911 also requires a taxpayer to make an election before he can qualify for the section 911 exclusion. Sec. 911(a); Faltesek v. Commissioner, 92 T.C. 1204, 1207 (1989). Petitioner failed to present evidence that he made a proper election and presented no credible evidence to indicate that he attempted to ascertain whether he qualified for the section 911 exclusion during the years in issue. Moreover, the reasonable cause exception to section 6661, under which petitioner seeks relief, provides that the Secretary may waive the addition to tax under section 6661 upon a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c) (emphasis supplied). We only review respondent's decision not to waive the section 6661 addition to tax upon a showing by petitioner that respondent abused his discretion in *367 refusing to waive the addition to tax. Mailman v. Commissioner, 91 T.C. 1079, 1083, 1085 (1988). Petitioner has failed to make such a showing. Accordingly, we hold for respondent on this issue. Decision will be entered under Rule 155 in docket No. 19153-87. Decision will be entered for the petitioner in docket No. 20320-87. Footnotes
1. On March 3, 1989, this Court granted respondent's motion to consolidate the case at docket No. 20320-87 with the case at docket No. 19153-87 for purposes of trial, briefing, and opinion.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. On brief, petitioners request that respondent return assets that he levied upon pursuant to a jeopardy assessment and which were previously held in the name of Carmen M. Fodor. Petitioners argue that respondent should return these assets in light of his concession that there are no issues with respect to Carmen M. Fodor. We assume petitioners are arguing that an overpayment exists. Sec. 6512(b). Petitioners bear the burden of proving that an overpayment exists. Petitioners' first raised this issue after the evidentiary record in this case was closed. Petitioners attached a copy of the settlement agreement of the District Court action brought by petitioner Carmen M. Fodor for wrongful seizure to their brief, but this document has not been admitted into evidence. In any event, the settlement agreement would not establish the fact that the levies in question were applied as payment for Carmen M. Fodor's taxes for the years in issue. There is no other evidence to establish that Carmen M. Fodor has overpaid her taxes for the years in issue.↩
4. The individual certificates of deposits purchased in 1983 and 1984 were as follows: ↩
Amount of Certificate of Deposit
Date of Purchase
Term
$ 40,000.00
10/4/83
32 days
41,786.09
10/4/83
180 days
40,000.00
11/4/83
30 days
40,000.00
12/4/83
30 days
32,975.07
2/2/84 30 days
43,782.34
4/1/84 180 days
32,975.07
4/2/84 30 days
32,975.07
7/31/84
30 days
46,004.29
9/28/84
180 days
5. See United States v. John P. Fodor, et al.↩, Criminal No. 86-125-A, United States District Court, Eastern District of Virginia. 6. Under 18 U.S.C. sec. 371 (1988)↩, it is unlawful for two or more persons to conspire to either commit any offense against the United States, or to defraud the United States, or any agency thereof. 7. The Foreign Military Sales program loaned money to foreign governments so that the foreign governments could purchase military goods. The contracts between Nordac and El Salvador were financed with funds loaned to El Salvador from the Foreign Military Sales program. The loan agreement between the El Salvador government and the United States required that the El Salvador government only purchase military goods made in the United States and that the commission fees paid in connection with the sale of military goods not exceed $ 50,000. In fulfilling these contracts, Nordac paid sales commissions in excess of $ 50,000 to petitioner and sold munitions manufactured in Yugoslavia to the El Salvador government. ↩
8. The Arms Export Control Act requires short-term importers and exporters of munitions located in the United States to obtain a transit license. Applications for the transit license must accurately identify the products being imported and exported. According to the indictment, the munitions that were sold to El Salvador by Nordac were shipped to the United States from Yugoslavia and then repackaged and identified on the transit license application as United States manufactured munitions. This was done to conceal the violation of the provision in the Foreign Military Sales program which requires that munitions purchased pursuant to the program be manufactured in the United States.↩
9. This is the same as the total amount of commission income which respondent determined for 1983 and 1984 in the notice of deficiency.↩
10. The presumption of correctness that attaches to respondent's determination has been qualified by some of the courts of appeals. In a recent opinion, the Fifth Circuit Court of Appeals stated: Several Courts, including this one, have noted that a court need not give effect to the presumption of correctness in a case involving unreported income if the Commissioner cannot present some predicate evidence supporting its determination. Although a number of these cases involved unreported illegal income, we agree with the Third Circuit that this principle should apply whether the unreported income was allegedly obtained legally or illegally. [Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991). Citations and footnotes references omitted.] The Court went on to state that before it would give the Commissioner the benefit of the presumption of correctness, "he must * * * provide the court with some indicia that the taxpayer received unreported income." Portillo v. Commissioner, supra↩ at 1133. If we were to apply this standard in the instant case, we believe that the evidence introduced by respondent provides indicia that petitioner received unreported income.
11. Respondent determined petitioner's commission income from Nordac to be $ 416,315 for 1983 and $ 219,048 for 1984, for a total commission income from Nordac in the amount of $ 635,363. ↩
12. We do not construe these admissions as an admission that petitioner received commissions from Nordac in his individual capacity as opposed to being an agent for Almacen, but the statements made on behalf of petitioner are consistent with such a finding. ↩
13. The evidence does not reveal the final disposition of the amounts placed in these certificates of deposit. Petitioner may have rolled over some of these certificates of deposit, but there is no evidence of this, and petitioner does not argue this on brief.↩
14. The Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002(a), 100 Stat. 1874, 1951, increased the section 6661(a)↩ addition to tax to 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after October 21, 1986.